PRENSA INSULAR DE PUERTO RICO, INC., y ANTONIO AYUSO VALDIVIESO, peticionarios, *v.* RAFAEL DE J. CORDERO, AUDITOR DE PUERTO RICO, demandado.

Núm. 429.—*Sometido:* Febrero 24, 1947. *Resuelto:* Marzo 26, 1947.

90

*Antonio Ayuso Valdivieso, pro se; Miguel Guerra-Mondragón y Gui-
llermo Cintrón Ayuso,* abogados de los peticionarios; *Hon. Pro-
curador General Interino Luis Negrón Fernández, Carlos Santana
Becerra y J. Rivera Barreras, Procuradores Generales Auxiliares,*
abogados del demandado.

El Juez Asociado Señor De Jesús emitió la opinión del tri-
bunal.

La jurisdicción original de este Tribunal ha sido invocada
por la corporación doméstica Prensa Insular de Puerto Rico,
Inc. y por Antonio Ayuso Valdivieso, en solicitud de un
auto perentorio de *mandamus* dirigido contra el Contador de
Puerto Rico para que les permita inspeccionar ciertos re-
cords y documentos que obran en su poder por razón de su
cargo.

Prensa Insular de Puerto Rico, Inc. es dueña de y pu-
blica el diario ''El Imparcial'', periódico de circulación ge-
neral en toda la isla de Puerto Rico. Antonio Ayuso Val-
divieso es abogado, periodista, contribuyente al Tesoro In-
sular por razón de bienes inmuebles, presidente de la indi-
cada Corporación y director de ''El Imparcial''. Como tal
director, tiene a su cargo la política editorial e informativa
del referido diario.

El 2 de febrero último Ayuso Valdivieso, en su carácter de contribuyente, de presidente de Prensa Insular de Puerto Rico, Inc. y de director de "El Imparcial", solicitó por escrito del Contador de Puerto Rico, Sr. Rafael de J. Cordero, que le informara: (a) si Concrete Industries Inc. y Caguas Development Co. habían vendido materiales de construcción a El Pueblo de Puerto Rico, a algún Municipio o a cualquiera Autoridad, Agencia o Dependencia del Gobierno Insular; y (b) que en caso de haberse verificado tales ventas de materiales de construcción, se sirviera especificar cantidades, fechas e importes de las ventas, y que por ser dicha información para fines de publicidad y de interés público, se sirviera suministrarla a la mayor brevedad posible.

Alegaron los demandantes que tienen especial interés y derecho a obtener tales informaciones para mantener a los ciudadanos de Puerto Rico enterados de las erogaciones que se hacen con los fondos públicos en todos sus pormenores y, de encontrar que existen irregularidades o normas inadecuadas en el gasto de los dineros públicos, orientar la opinión pública a través de editoriales y abogar por la adopción de sanas medidas legislativas y administrativas que redunden en beneficio de los fondos públicos de Puerto Rico y de su mejor administración.

No contestó el Contador y el 6 de febrero último, Ayuso Valdivieso, por conducto del notario J. Pedro Miranda, lo requirió para que le permitiese examinar los libramientos y comprobantes de pago, las facturas y otros documentos relacionados con las transacciones llevadas a cabo desde el 17 de abril de 1945 hasta el 6 de febrero de 1947 entre el Gobierno de Puerto Rico, sus Agentes, Municipios, etc., y las firmas Concrete Industries, Inc. y Caguas Development Co. Manifestó el Contador al Notario que no estaba dispuesto a mostrar documento alguno a Ayuso Valdivieso ni a ninguna otra persona que no estuviera directamente interesada en el mismo, a menos que mediara orden de una corte. Fué

entonces que los peticionarios recurrieron a este Tribunal en solicitud de un auto perentorio de mandamus.

Considerando que el demandado es un alto funcionario del Gobierno de Puerto Rico y que de no asumir esta corte jurisdicción original el remedio que pudieran obtener los peticionarios podría resultar académico por tardío, expedimos el auto alternativo. *Mun. de Quebradillas* v. *Sec. Ejecutivo,* 27 D.P.R. 147. Posteriormente, pero antes de que compareciera el demandado, radicaron los peticionarios una demanda complementaria en la que, sustancialmente, alegaron que después de radicada la demanda original, se presentaron varias denuncias por libelo contra Ayuso Valdivieso; que uno de los denunciantes es el Contador de Puerto Rico; y, que el peticionario Ayuso Valdivieso necesita inspeccionar los documentos a que se contrae la demanda original, no solamente para proseguir su campaña periodística, sí que también para preparar su defensa en los citados casos de libelo.

Compareció el demandado aceptando haber recibido la carta de 2 de febrero último y haber sido requerido por el notario J. Pedro Miranda y alegó ciertas defensas, las cuales discutiremos en el curso de esta opinión.

I

■ Como primera cuestión alega el demandado que este Tribunal carece de jurisdicción sobre la materia. Su defensa de falta de jurisdicción la deriva del art. 20 de la Ley Orgánica, que en lo pertinente prescribe:

"El Contador llevará las cuentas generales del Gobierno, será el custodio de ellas y conservará los comprobantes que a ellas pertenezcan. Su jurisdicción sobre las cuentas, bien sean de fondos o de propiedades, y sobre todos los comprobantes y expedientes correspondientes a las mismas, será exclusiva . . .

"Las decisiones del Contador serán finales, a no ser que de ellas apele la parte perjudicada o el jefe del departamento interesado, dentro de un año, en la forma que se prescribe más adelante. *El*

*Contador tendrá,* excepto en los casos que se determinan más adelante, *la misma autoridad que confiere la ley al Contralor General de los Estados Unidos,"* . . . (Bastardillas nuestras.)

Arguye el demandado que el art. 161 de los Estatutos Revisados de los Estados Unidos autorizó a los jefes de departamento del Gobierno Federal a promulgar reglamentos no inconsistentes con la ley, para el gobierno de sus respectivos departamentos, la conducta de sus funcionarios y empleados y la custodia, uso y conservación de los records, papeles y propiedades pertenecientes a dichos departamentos; que el art. 46 del Título 31 del Código de los Estados Unidos declara aplicables al cargo de Contralor General todas las leyes que se refieran a la administración de los departamentos hasta donde fuere posible; que haciendo uso de la autoridad conferídales por la ley, tanto los jefes de departamento como el Contralor General de los Estados Unidos, han aprobado reglamentos relativos a la exhibición de documentos y expedición de copias certificadas, en los cuales, de tal modo restringen el examen de los documentos y la expedición de copias certificadas, que prácticamente los hacen inaccesibles al público. Invoca varios casos de funcionarios inferiores de los distintos departamentos que, habiendo sido citados como testigos para que produjeran en la corte documentos oficiales de su departamento, en obediencia a tales reglamentos, se negaron a producirlos sin el consentimiento de su jefe o a declarar sobre información adquirida por ellos con motivo de su cargo; y que habiendo sido castigados por desacato fueron puestos en libertad a través de procedimientos de hábeas corpus por el fundamento de que, teniendo tales reglamentos fuerza de ley, los tribunales no tenían jurisdicción para castigarlos por haber actuado en obediencia a dichos reglamentos. Concluye, entonces, el demandado, que teniendo él tan amplio poder de reglamentación, su facultad para permitir la exhibición de documentos y la expedición de copia de los mismos es tan discrecional, que las cortes no pueden intervenir con su actuación.

La falacia de este argumento se advierte al considerar que la facultad que para reglamentar concede a los jefes de departamento el art. 161 de los Estatutos Revisados de Estados Unidos está condicionada a que la reglamentación *no sea inconsistente con la ley*. No abrigamos duda que el Contador tiene facultad para reglamentar la expedición de copias de documentos y la inspección de éstos de manera razonable, de suerte que no se perjudiquen la buena marcha y el orden de su oficina. Pero su facultad para reglamentar está limitada por el art. 409 del Código de Enjuiciamiento Civil que concede a todo ciudadano el derecho ''a inspeccionar y sacar copia de *cualquier documento público de Puerto Rico,* salvo lo expresamente dispuesto en contrario por la ley'', y también por el 410 dispositivo de que *''todo funcionario público* bajo cuya custodia obrare algún documento público, está en la obligación de facilitar, al requerírsele, copia certificada del mismo mediante pago de los derechos legales correspondientes . . . '' (Bastardillas nuestras.)

En relación con la cuestión jurisdiccional, también invoca el demandado el caso de *Abueva* v. *Wood,* 45 Jur. Fil. 643 (1924). Allí se trataba de una solicitud de mandamus presentada por varios miembros de la Comisión de Independencia de Filipinas contra el Gobernador de Filipinas, el Contador y otras personas que siendo miembros de dicha Comisión, lo eran a la vez de la Legislatura de Filipinas. Interesaban los recurrentes que los recurridos les exhibieran y les permitieran examinar todos los resguardos y demás prueba documental que tuvieren en su poder, demostrativos de los desembolsos y gastos hechos por la Comisión de Independencia. Alegaron que los comprobantes originales se hallaban en poder de Paciano Dizon, como Auditor Insular Interino y que los duplicados de esos comprobantes estaban en poder de los funcionarios de la Comisión recurridos, y que, tanto éstos como el Gobernador y el Auditor, se negaban a permitir que los recurrentes examinasen dichos comprobantes. Se hacen otras alegaciones que no son pertinentes a la

cuestión que vamos a discutir. Los recurridos impugnaron la facultad de la corte para expedir el auto de mandamus y en lo que respecta a su jurisdicción sobre el Auditor, dijo el Tribunal:

"Con respecto a la jurisdicción del Tribunal para obligar al Auditor Insular Interino, Sr. Dizon, que cumpla con lo pedido en la solicitud, puede decirse que el Auditor de las Islas Filipinas, según la ley, tiene (*a*) jurisdicción exclusiva sobre las cuentas del Gobierno y antecedentes o medios relacionados, y (*b*) facultad y autoridad para examinar, de acuerdo con la ley y reglamentos administrativos, todos los desembolsos de fondos o efectos pertenecientes al Gobierno, o retenerlos a nombre del mismo o de las provincias o municipios, y conservar los comprobantes con aquéllos relacionados. La Ley Jones dispone, además, que las resoluciones. del Auditor serán definitivas y concluyentes para las ramas ejecutivas del Gobierno, excepto que puede apelarse por éstas o por el jefe del departamento correspondiente dentro de un año al Gobernador General, apelación que expondrá específicamente el acto determinado del Auditor contra el cual se ha objetado, expresando las razones y autoridades para que se revoque su resolución. La ley también dispone que en caso de que no haya acuerdo entre el Gobernador General y el Auditor, se conceda otra apelación para ante el Secretario de Guerra, cuya decisión sobre la cuestión planteada será final y concluyente. (Ley del Congreso de 29 de agosto de 1916, artículos 24 y 25, tomo 12, Leyes Públicas, págs. 254–255.)

"En virtud de dichas disposiciones de la Ley Jones, la resolución del Auditor es final, a menos que se presente apelación dentro del plazo marcado. La decisión del Auditor es definitiva a menos que se revoque o modifique en la forma que la ley dispone, y los tribunales carecen, por tanto, de jurisdicción para intervenir o modificar su resolución sobre estas cuestiones. La jurisdicción administrativa del Auditor sobre las cuentas, ya se trate de fondos o efectos, y todos los comprobantes y documentos con ellos relacionados, será exclusiva. La jurisdicción del Auditor al examinar y liquidar cuentas es exclusiva, ya se trate de fondos o efectos, y todos los comprobantes y documentos con ellos relacionados, y su resolución o su liquidación de tales rentas y cantidades recibidas y desembolsos hechos es firme y concluyente, a menos que se interponga una apelación dentro del

plazo de un año. Teniendo el Auditor jurisdicción concluyente y firme, excepto en caso de apelación, para examinar todas las cuentas de gastos de fondos públicos del Gobierno de Filipinas, parece que la conclusión razonable debe ser declarar que tiene, al menos, ciertas facultades discrecionales para dictar una conclusión independiente y no coartada. El Departamento Legislativo del Gobierno de los Estados Unidos en las Islas Filipinas no habría declarado que las decisiones del Auditor son firmes a menos que se interponga apelación contra ellas sin tratar de darle una discreción ilimitada en cuanto a los mismos. (Lamb contra Phipps, 22 Jur. Fil., 471; *State* v. *Babcock*, 22 Neb., 38.)

"Sin discutir más las cuestiones presentadas, opinamos, y así lo declaramos, que carecemos de facultades y de jurisdicción para conceder el remedio solicitado;" . . . (págs. 670–71).

El demandado pone gran énfasis en el caso de *Abueva* por tratarse de una interpretación de la Carta Orgánica de Filipinas, cuyas disposiciones respecto al Contador son similares a las contenidas en la nuestra. El hecho de que la jurisdicción del Contador sobre las cuentas y sobre todos los comprobantes y expedientes correspondientes a las mismas sea exclusiva, no significa que el Contador sea un funcionario que esté por encima de la ley. *Cf. Municipality of Río Piedras* v. *Serra, Garabís & Co.*, 65 F.2d 691, 693 (1933). La exclusividad de su jurisdicción en relación con la custodia de cuentas y comprobantes, es con respecto a los demás departamentos del Gobierno, de suerte que sea el Contador el único funcionario bajo cuya custodia y responsabilidad se hallen todas las cuentas del Gobierno y sus correspondientes comprobantes, de ese modo evitando que dichas cuentas y comprobantes se encuentren dispersos por los distintos departamentos.

Es verdad que el art. 20 de la Ley Orgánica prescribe que las decisiones del Contador serán finales, a menos que de ellas apele la parte perjudicada o el jefe del departamento interesado, dentro de un año, en la forma que se prescribe

en el art. 21.(¹)   Pero esas decisiones que tienen carácter de finales son, según el art. 21, las que puedan recaer en la liquidación de una cuenta o reclamación.   Aun la decisión del Gobernador confirmando o revocando la del Contador en tales casos, está sujeta *"a cualquier derecho de acción que en contrario pueda disponerse por ley."* (Bastardillas nuestras.) Pero en el caso que nos ocupa, donde no se trata de liquidación de cuentas, sino de inspección de documentos, no es de aplicación lo dispuesto en los artículos 20 y 21 de la Ley Orgánica.   Consecuentemente, los demandantes no están obligados a seguir el procedimiento administrativo a que alude el Tribunal Filipino.   El razonamiento en que descansa la decisión del caso de *Abueva* no nos convence y con la mayor deferencia a dicho tribunal, no estamos dispuestos a seguirla. No vemos por qué razón este Tribunal carece de jurisdicción para obligar, por auto de mandamus, al Contador de Puerto Rico, como a cualquier otro funcionario público, a cumplir con un deber impuéstole por ley.

## II

▆▆ Arguye el demandado que el derecho que el art. 409 del Código de Enjuiciamiento Civil concede a todo ciudadano de inspeccionar y sacar copia de cualquier documento público, es un derecho abstracto; que no existe en Puerto Rico ninguna ley que imponga al demandado el deber de permitir tal inspección y que no sólo precisa que exista el deber, sino que ese deber sea especialmente impuesto al demandado por razón de su cargo.   Decir que existe un derecho sin un deber correlativo es sencillamente un contrasentido.

(¹)El art. 21 de la Ley Orgánica prescribe:
*"Cualquier persona perjudicada en la liquidación de su cuenta o reclamación por la acción o decisión del Contador,* podrá, dentro de un año, entablar una apelación por escrito ante el Gobernador, en la cual expondrá específicamente la resolución particular, contra la que apela, tomada por el Contador, y las razones y autoridades en que se apoya para pedir la revocación de dicha decisión. La decisión del Gobernador en tal caso será definitiva, *con sujeción al derecho de acción que en contrario pueda disponerse por ley".*   (Bastardillas nuestras.)

Si no existe un deber no puede haber un derecho, porque todo derecho necesariamente conlleva la existencia de un deber. Como ha dicho un eminente jurista:

"Los derechos y deberes son necesariamente correlativos. No puede existir un derecho sin un deber correspondiente o un deber sin un correspondiente derecho, como no puede existir un esposo sin una esposa o un padre sin un hijo, porque todo deber constituye una obligación hacia alguna persona o personas a cuyo favor, por lo tanto, surge un derecho correlativo. Y a la inversa, todo derecho debe ser un privilegio contra alguna persona o personas sobre quienes, por lo tanto, se impone un deber correlativo. Todo derecho o deber entraña un *vinculum juris* o nexo de obligación legal, por la cual dos o más personas quedan obligadas mutuamente. No puede existir un deber sin que exista alguien a quien se le deba; no puede haber un derecho sin que exista alguien de quien pueda reclamarse y no puede existir un daño sin que haya alguien que lo hubiere sufrido, es decir, cuyo derecho haya sido violado." Salmond *on Jurisprudence*, (9a. ed. 1937) sec. 72, pág. 291.

Pero es que el deber de permitir la inspección no sólo existe como un deber correlativo al derecho de inspección concedido por el art. 409, sí que también surge implícito del deber que impone al demandado el art. 410([2]) de expedir copias certificadas previo pago de los correspondientes derechos. La existencia de ese deber claramente impuesto por la ley, conlleva implícitamente el derecho no menos claro de los demandantes a solicitar tales copias. Pero para hacer uso de ese derecho necesitan los demandantes examinar previamente los documentos, pues, ¿cómo han de determinar qué copias son las que van a pedir? A este efecto, al declarar con lugar un auto perentorio de mandamus contra el Auditor de Cuentas del Estado para que permitiera al de-

---

.([2]) El art. 410 del Código de Enjuiciamiento Civil prescribe:

"Todo funcionario público bajo cuya custodia obrare algún documento público, está en la obligación de facilitar, al requerírsele, copia certificada del mismo, mediante el pago de los derechos legales correspondientes, y dicha copia será admisible como evidencia en los mismos casos y con igual efecto, que el escrito original."

mandante inspeccionar ciertos comprobantes en poder del demandado por razón de su cargo, dijo la Corte Suprema de Vermont:

" . . . Además, somos de opinión que la existencia de este derecho [de inspección] con respecto a comprobantes, archivos, papeles y documentos en la oficina del Auditor de Cuentas está implícitamente reconocido por la referida ley de 1904, toda vez que el inteligente ejercicio a cabalidad de este derecho está supeditado al derecho de inspección para determinar cuáles son los records y documentos de que se desean copias. En Alabama se ha decidido que un estatuto similar que exige al Auditor del Estado, a petición y previo pago de los derechos fijados por la ley, a suministrar copia certificada de cualquier documento que deba archivarse en su oficina, implica que hay un derecho previo a ver el documento, porque ¿cómo, pregunta la corte, podría de otro modo saberse si dicho documento habrá de ser de alguna utilidad? *Brewer* v. *Watson*, 61 Ala. 310." *Clement* v. *Graham*, 63 A. 146, 153 (1906).

Para que el derecho a la inspección pueda reclamarse por mandamus no precisa una ley que expresamente imponga al demandado el deber de permitirla, como una obligación comprendida en las atribuciones de su cargo.([3]) Basta que exista el derecho por parte de los demandantes para que *ipso facto* surja el deber por parte del demandado impuéstole implícitamente por el art. 409 del Código de Enjuiciamiento Civil que creó el derecho que reclaman los demandantes.

En el famoso caso de *Marbury* v. *Madison,* 1 Cranch 137 (U. S. 1803), refiriéndose a la naturaleza del auto de mandamus, se dijo por el Gran Juez Presidente:

"Blackstone, en el tercer volumen de sus Comentarios, pág. 110, define el mandamus como 'una orden expedida por la corte de King's

---

([3]) El art. 649 del Código de Enjuiciamiento Civil prescribe:

"El auto de *mandamus* es un auto altamente privilegiado dictado por el Tribunal Supremo de la Isla, o por las Cortes de Distrito de Puerto Rico, a nombre de El Pueblo de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese *y que esté dentro de sus atribuciones o deberes.* Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo." (Bastardillas nuestras.)

Bench a nombre del Rey, y dirigida a cualquier persona, corporación o corte inferior de justicia dentro de los dominios del Rey, requiriéndoles a hacer alguna cosa en particular que en dicha orden se especifica, *la cual corresponda a su cargo y deber*, y que la corte de King's Bench haya previamente determinado o por lo menos presumido que está en consonancia con el derecho y la justicia' ''.

Interpretando esa definición de Blackstone, que en lo pertinente es igual a la disposición contenida en el art. 649 del Código de Enjuiciamiento Civil, dijo el Tribunal:

"Estas circunstancias ciertamente concurren en este caso . . .

"Es verdad que el mandamus aquí solicitado no es para la ejecución de un acto cuyo cumplimiento expresamente imponga el estatuto.

"Es para la entrega de un certificado de nombramiento sobre lo cual las leyes del Congreso guardan silencio. No consideramos que esta circunstancia afecte el caso. Ya se ha dicho que el peticionario tiene un derecho legal adquirido a ese certificado de nombramiento, del cual el ejecutivo no puede privarlo. El peticionario ha sido nombrado para un cargo del cual no puede ser removido a voluntad del Ejecutivo; y habiendo sido así nombrado, tiene derecho al certificado de nombramiento que el Secretario ha recibido del Presidente para uso del peticionario. *En verdad, la ley del Congreso no ordena al Secretario de Estado enviar el certificado de nombramiento al peticionario;* pero ha sido puesto en sus manos para la persona que tiene derecho al mismo y no tiene más derecho a retenerlo el Secretario de Estado que ninguna otra persona . . .

"*Este es, entonces, un caso claro de mandamus, bien sea para entregar el certificado de nombramiento o una copia del mismo . . .*" (Bastardillas nuestras.)

Esa ha sido la constante interpretación que este Tribunal ha dado al art. 649 del Código de Enjuiciamiento Civil. Desde el año 1917 en que se decidió el caso de *Cintrón* v. *Berríos*, 24 D.P.R. 721, se ha venido utilizando el remedio de mandamus en infinidad de casos de reposición a cargos públicos de que ilegalmente habían sido privados los respectivos demandantes, a quienes no hubiera podido hacerse justicia si hubiéramos seguido la interpretación restringida que ahora propone el demandado.

## III

█ Contrario a la máxima latina *ubi jus ibi remedium,* puede existir el derecho de inspección sin que exista un remedio para hacer valer ese derecho. Esto es así porque el art. 651 del Código de Enjuiciamiento Civil exige, como condición para la expedición del auto de mandamus, que el que lo solicite tenga un interés especial, distinto del interés general que pueda tener cualquier ciudadano en el derecho que reclama. De ahí que una persona que por mera curiosidad desee inspeccionar un documento público, no puede recurrir al remedio de mandamus. *Bend Pub. Co.* v. *Haner,* 244 Pac. 868 (Oregon 1926); *Pressman* v. *Elgin,* 50 A.2d 560 (Md. 1947).

El demandado invoca el caso de *Lutz* v. *Post,* 14 D.P.R. 860, para sostener que en esta jurisdicción se ha resuelto que los directores de periódicos considerados como una clase, no tienen un interés especial en la obtención de copias de documentos públicos que le da derecho a solicitar un auto de mandamus para obtenerlas. Se dijo en dicho caso:

"¿Tienen los directores de periódicos, considerados como una clase determinada, más derechos que otros ciudadanos con respecto a los archivos de las oficinas públicas? Opinamos que no. Y si no lo tienen, entonces el peticionario en el presente caso, no tiene más interés en la materia de que se trata en este pleito, que cualquier otro ciudadano de Ponce o de Puerto Rico.

"  *       *       *       *       *       *       *

"Ciertamente, un interés general como el que cualquier ciudadano de la Isla podría tener en el asunto, no es suficiente para dar a una persona el derecho de entablar un pleito de *mandamus* en un caso como el que ante nos pende; y si los directores de periódicos, considerados como una clase, tienen derechos o intereses especiales en tales casos, no se nos ha señalado ningún texto ni decisión que sostenga semejante principio; ni hemos podido encontrar autoridad alguna en ese sentido, en ninguno de los libros de textos legales que hemos podido consultar en la diligente investigación practicada desde que este asunto fué sometido a nuestra consideración" . . . (págs. 874-5).

Eso se dijo por este Tribunal en 1908, pero veinte años después, el Tribunal Supremo de Michigan, en el caso de

*Nowack* v. *Fuller*, 219 N. W. 749 (1928), 60 A.L.R. 1351, en que se trataba de un mandamus interpuesto por el editor de un periódico contra el Auditor General del Estado, para que se obligase a éste a permitir la inspección de ciertos documentos públicos, al referirse al interés especial del peticionario que le daba derecho a recurrir al auto de mandamus, dijo lo siguiente:

"Aparte de su interés público, su petición demuestra que ha sido obstaculizado y perjudicado en su negocio por la negativa del demandado a permitirle inspeccionar los documentos de su oficina. Este es un interés especial. ¿Es este interés suficiente para darle derecho al auxilio de esta corte por medio de un auto de mandamus? Opinamos que sí. El demandante es administrador y editor de un periódico que se publica y circula en Michigan. El demandante vende las noticias al público por medio de su periódico. En una manera propia y legal, él tiene un derecho a publicar asuntos de interés público. Los ciudadanos y contribuyentes de este Estado están interesados en saber si los negocios públicos están debidamente administrados. Negándose al demandante acceso a los documentos públicos para el propósito de conseguir tal información, se le priva de derechos legales para cuya protección tiene derecho a recurrir al auto de mandamus. Es el claro deber del Auditor General exhibir sus documentos oficiales a cualquier ciudadano de Michigan que desee inspeccionarlos con cualquier objeto apropiado y lícito en circunstancias que no perjudiquen los asuntos oficiales".

Al mismo efecto, véanse *Holcombe* v. *State*, 200 So. 739 (Ala. 1941); *Bend Pub. Co.* v. *Haner*, supra; Seaton, *The Rights and Privileges of the Press*, sección 10, pág. 16; Thayer, *Legal Control of the Press*, (1944) pág. 134.

El derecho de la prensa a inspeccionar documentos públicos ha progresado mucho desde 1908, en que se resolvió el caso de *Lutz,* supra. Probablemente los Jueces que intervinieron en su decisión no lo hubieran resuelto ahora, en lo que a este punto concierne, en la forma en que lo hicieron hace más de 38 años.

Dada la conclusión a que llegamos con respecto al interés especial que, como dueños y editores de "El Imparcial", tie-

nen los demandantes en el presente caso, no es necesario resolver si la mera condición de contribuyentes les da derecho al mandamus. *Cf. Buscaglia, Tes. v. Corte,* 64 D.P.R. 11.

## IV

■ Arguye también el demandado que el auto de mandamus no debe expedirse en este caso porque los demandantes debieron solicitarlo como relatores por conducto del Procurador General.

Nunca, que sepamos, se ha expedido en esta jurisdicción un auto de mandamus a petición de un relator por conducto del Procurador General. Y esto es así, porque el art. 651 del Código de Enjuiciamiento Civil expresamente dispone que el auto de mandamus puede ser expedido a petición (*on the information*) de la parte especialmente interesada (*beneficially interested*).(4) *Union Pacific R. R. Co. v. Hall et al.,* 91 U. S. 343 (1875); *Pressman v. Elgin,* supra.

## V

■ Por último, alega el demandado que no procede la expedición del auto de mandamus porque él había dado traslado de las cuentas y comprobantes relacionados con la Concrete Industries, Inc. al Procurador General por orden del cual el Fiscal de Distrito de San Juan estaba practicando una investigación. Opinamos que ésta no es una excusa suficiente para impedir al demandado cumplir su deber de permitir a los demandantes examinar los documentos en cuestión. Dichas cuentas y comprobantes, por ministerio de la ley, están en todo momento bajo el control y custodia del demandado como Contador de Puerto Rico y fácil le será hacer los arreglos pertinentes con el Fiscal, si es que todavía no se ha terminado la investigación, para que le permita a los demandantes hacer la inspección y tomar las notas que interesan. *Collins v. State,* 143 S. W.2d 1.

(4) La palabra *"information"* y la frase *"beneficially interested"* de la versión inglesa aparecen incorrectamente traducidas en la versión española que usa la palabra *"informes"* y *"parte beneficiada e interesada."*

Somos de opinión que los demandantes tienen derecho al auto perentorio de mandamus que solicitan para que se les permita inspeccionar y tomar notas de los comprobantes y demás documentos mencionados en el Acta Notarial extendida por el notario J. Pedro Miranda el 6 de febrero último; pero los demandantes están en el deber de someterse a la supervisión razonable del demandado o sus agentes o empleados para garantizar la seguridad de dichos documentos, y a cualquier otra medida razonable que les impusieren, a los efectos de no perjudicar la labor de su oficina. *Direct Mail Service* v. *Registrar of Motor Vehicles*, 5 N. E.2d 545, 547 (Mass. 1937).

No tienen derecho los demandantes, sin embargo, a obligar al Contador de Puerto Rico a que les suministre la información que le pidieron en su carta de 2 de febrero último. El demandado no tiene el deber de hacer tal búsqueda y suministrar esa información a petición de ciudadanos privados, a menos que se soliciten copias certificadas de determinados documentos, previo pago de los derechos correspondientes. Art. 410 del Código de Enjuiciamiento Civil.

*Procede, por lo expuesto, declarar con lugar la demanda y dictar el auto perentorio de mandamus.*