SENADOR JESÚS SANTA APONTE y OTROS, apelantes, *v.* SENA-
DOR LUIS A. FERRÉ AGUAYO y OTROS, apelados. *

*Número:* MC-77-3 *Resuelto:* 25 de enero de 1977

* NOTA DEL COMPILADOR: Véase *Santa Aponte* v. *Srio. del Senado,*
105 D.P.R. 750 (1977).

*Miriam Naveira de Rodón,* abogada de los apelantes; *Héctor M. Laffitte, Héctor Martínez Muñoz* y *Santos P. Amadeo,* abogados de los apelados.

RESOLUCIÓN

 Bajo el sistema democrático de gobierno que rige en Puerto Rico, la autoridad para interpretar la Constitución y las leyes del país reside exclusivamente en la Rama Judicial. *Baker* v. *Carr,* 369 U.S. 186 (1962); *Powell* v. *McCormack,* 395 U.S. 486 (1969); *Roudebush* v. *Hartke,* 405 U.S. 15 (1972). La Rama Judicial puede resolver que determinada facultad le corresponde tan solo a otra Rama, pero la interpretación al efecto es atributo exclusivo de los tribunales.

 A fin de proteger debidamente la función constitucional y la jurisdicción de este foro e impedir que se torne académica la decisión que en su día recaiga y preocupado este Tribunal por los derechos constitucionales de las partes envueltas y por la garantía de debido proceso en el recuento que eventualmente se lleve a efecto, se ordena a tenor de la Regla 29 del Reglamento de este Tribunal:

1. Las papeletas y todo otro material relativo a este caso se mantendrán bajo la custodia conjunta de la Comisión Especial de Escrutinio designada por el Senado y del Tribunal Electoral.

2. Como medida provisional y sin que ello en modo alguno prejuzgue la sentencia que este Tribunal resuelva emitir en este pleito y toda vez que no existen contra el apelante.cargos por delito o inmoralidad, ni se alega fraude o irregularidad en su elección, la cual está favorecida por una presunción de regularidad como la de todos los demás legisladores, y en protección del derecho de los electores del Distrito Senatorial de Humacao a tener plena representación en el Senado, deberá darse asiento en el Senado al recurrente Jesús Santa Aponte.

Las partes radicarán sus alegatos simultáneamente en o antes del 4 de febrero de 1977. Se señala vista para el 7 de

febrero de 1977, a las 9:00 a.m., para la argumentación del recurso.

El Secretario expedirá el correspondiente mandamiento y notificará esta Resolución a los apelantes, al Senado de Puerto Rico por conducto de su Secretario, Héctor M. Hernández, y de su Macero, Pablo Torres Medina, y al Tribunal Electoral.

Lo acordó el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Angel M. Martín disiente en voto separado.

(Fdo.) Ernesto L. Chiesa

*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 25 de enero de 1977

En base a una moción en auxilio de la jurisdicción de este Tribunal presentada por Jesús Santa Aponte y cuatro electores del Distrito Senatorial de Humacao, y sin dar oportunidad al Senado de Puerto Rico para expresar su posición con respecto a los planteamientos que en dicha moción se hacen, este Tribunal ha ordenado que se le dé asiento en el Senado de Puerto Rico a Jesús Santa Aponte como Senador electo por el Distrito de Humacao.

El Senado de Puerto Rico suspendió al Senador Santa del ejercicio de sus funciones como Senador, según surge de las Actas del Senado del día 12 de enero de 1977 (Apéndice III de apelantes), en vista de una "Petición de Recuento e Impugnación del resultado de las Actas y del Certificado de Elección" del Senador Santa como Senador por el Distrito Senatorial de Humacao.

Surge de la referida Petición de Recuento e Impugnación que la elección de Jesús Santa Aponte como Senador fue cer-

tificada por el Tribunal Electoral reflejando una mayoría de 52 votos en una elección en que participaron más de 200,000 electores. Por otro lado la Petición expresa que el resultado total original de dicha elección tomado de las Actas de Precinto, incluyendo el voto adelantado, revelaba que Santa había perdido su elección por 790 votos. Surge además que el Partido Nuevo Progresista presentó ante el Tribunal Electoral una solicitud de recuento de 66 colegios del distrito en cuestión en 28 de diciembre de 1976 alegando que un recuento total de los mencionados colegios podría resultar en una adjudicación de votos suficientes para cambiar el resultado de la elección, sin que hasta el 7 de enero de 1977 hubiese sido contestada. En adición se expresa en la Petición que un examen de algunas de las actas de Colegio efectuado el 29 de diciembre reflejaron errores técnicos en la unidad de estadísticas del Tribunal Electoral de 16.6% de equivocaciones que, de proyectarse al Distrito completo, alteraría el número de votos a favor del candidato Estrada. En adición se expresa que en la revisión del 29 de diciembre surgieron 28 discrepancias en las actas de 60 colegios examinados, lo que significaría una discrepancia en cada dos colegios en un distrito en el cual había cerca de dos mil colegios electorales. Por último se alega en dicha Petición que las actas de escrutinio en poder del Partido Nuevo Progresista reflejan que el Senador Santa fue derrotado por 165 votos.

El texto de la moción presentada ante el Senado por el Senador Nogueras y que resultó en la suspensión del Senador Santa es el siguiente:

"Vista la Petición de Recuento e Impugnación del resultado de las Actas y del Certificado de Elección del señor Jesús Santa Aponte como Senador por el Distrito Senatorial de Humacao, y del escrutinio de su elección, y los serios y graves planteamientos que de la misma surgen, se propone que hasta tanto la Comisión Especial que ha sido nombrada rinda su informe al Senado,

y hasta tanto este Cuerpo tome una acción final sobre el asunto, se deje en suspenso el reconocimiento de la condición de Senador por el Distrito de Humacao al señor Santa Aponte y no se le dé la continuada posesión de su escaño como tal Senador, reservándosele el derecho de comparecer ante la Comisión Especial que ha sido nombrada con el propósito de alegar contra la petición y sostener su derecho a ocupar dicho escaño en este Senado."

Luego de discutida la precedente moción, ésta fue aprobada por la mayoría del Senado, procediendo éste a designar una Comisión Especial de cinco (5) senadores, compuesta por tres senadores del Partido Nuevo Progresista y dos del Partido Popular Democrático, con la encomienda de efectuar un recuento total de los votos emitidos a favor del Senador Santa y a favor del candidato derrotado Francisco Estrada Bibiloni. Y, según he dicho antes, el Senador Santa fue suspendido de sus funciones como Senador hasta tanto el Senado realizase el recuento.

Se cuestiona la facultad del Senado para suspender al Senador Santa en esas circunstancias.

La Constitución del Estado Libre Asociado de Puerto Rico dispone lo siguiente en relación con las facultades de ambas Cámaras Legislativas:

"Cada cámara será el único juez de la capacidad legal de sus miembros, de la validez de las actas y del escrutinio de su elección; elegirá sus funcionarios, adoptará las reglas propias de sus cuerpos legislativos para sus procedimientos y gobierno interno; y con la concurrencia de tres cuartas partes del número total de los miembros de que se compone, podrá decretar la expulsión de cualquiera de ellos por las mismas causas que se señalan para autorizar juicios de residencia en la sección 21 de este Artículo. Cada cámara elegirá un presidente de entre sus miembros respectivos." Art. III, Sec. 9.

La segunda parte de la citada Sec. 9 se refiere a la expulsión de cualquier miembro de una de las Cámaras por las causales de traición, soborno, otros delitos graves y aquellos delitos menos graves que impliquen depravación, para lo cual

se requiere la concurrencia de 3/4 partes del número total de los miembros de que se compone la Cámara en cuestión. Dicha segunda parte no tiene relevancia con el planteamiento del apelante Santa pues no surge que existan tales causales.

Lo que sí está envuelto en este recurso es la primera parte de la Sec. 9 que declara que "cada cámara será el único juez de la capacidad legal de sus miembros, de la validez de las actas y del escrutinio de su elección."

De la faz de la disposición constitucional citada precedentemente no tengo duda alguna de que el Senado tiene el derecho de rechazar la validez de las actas del Tribunal Electoral y del escrutinio de la elección de uno de sus miembros. Y, en el ejercicio de esa facultad, puede suspender provisionalmente uno de sus miembros hasta tanto comprueba la validez de las actas y del escrutinio.

Entiendo que es puramente discrecional del Senado, dependiendo de las circunstancias presentes, el rechazar la validez de las actas y del escrutinio y como consecuencia negar al miembro afectado el ejercicio de sus funciones como Senador. Si el Senado, en el uso de su discreción, usó buen o mal juicio, no es de nuestra incumbencia. Solamente debe este Tribunal intervenir en las actuaciones al respecto de cualquiera de las Cámaras cuando se hubiere demostrado abuso de poder que afecte los derechos constitucionales fundamentales del miembro rechazado. Claramente, este no es el caso. De acuerdo con las Actas del Senado que nos presenta la parte apelante surge palmariamente que el Senado tuvo motivos fundados para creer que estaba en cuestión la validez del escrutinio realizado por el Tribunal Electoral y por tanto las actas de certificación de elección.

La deferencia que me merece el Senado de Puerto Rico, como parte integrante de una de las tres ramas de gobierno en nuestro ordenamiento constitucional, no me permite poner en duda su discreción especialmente cuando no he tenido oportunidad de oírle. Creo que este Tribunal se ha apartado

en el día de hoy, en ausencia de los elementos de juicio necesarios para concluir que el Senado pueda haberse excedido de sus poderes constitucionales, de la norma fundamental de separación de poderes que es piedra angular de nuestro sistema de gobierno.

No obstante las expresiones que preceden deseo consignar que entiendo que es función constitucional de este Tribunal el interpretar la Constitución y las leyes del Estado Libre Asociado de Puerto Rico. En el ejercicio de esa función velaré por la protección de los derechos fundamentales del ser humano. Las puertas de este Tribunal estarán siempre abiertas para atender los reclamos válidos de los ciudadanos. Si en el curso de los procedimientos que realice el Senado de Puerto Rico se cometieren desmanes, atropellos o abuso de poder, defenderé con el mayor celo los reclamos de cualquier ciudadano que se considerare afectado por ellos.