EL VOCERO DE PUERTO RICO, demandante, *v.* COMISIÓN ESTATAL DE ELECCIONES, JUAN R. MELECIO MACHUCA, JOSÉ ARIEL NAZARIO ÁLVAREZ, CARLOS CANALS MORA y MANUEL RODRÍGUEZ ORELLANA, demandados; VICTORIA MUÑOZ MENDOZA, PEDRO ROSELLÓ GONZÁLEZ, FERNANDO MARTÍN GARCÍA, ANTONIO J. COLORADO LAGUNA, CARLOS ROMERO BARCELÓ, VÍCTOR GARCÍA SAN INOCENCIO, MIGUEL HERNÁNDEZ AGOSTO, ROBERTO REXACH BENÍTEZ, RUBÉN BERRÍOS MARTÍNEZ, JOSÉ RONALDO JARABO ÁLVAREZ, ZAIDA HERNÁNDEZ TORRES, DAVID NORIEGA RODRÍGUEZ, HÉCTOR LUIS ACEVEDO PÉREZ, CARLOS DÍAZ OLIVO e HIRAM MELÉNDEZ RIVERA, partes interesadas.

*Número:* MD-92-10          *Resuelto:* 2 de junio de 1992

*Juan R. Marchand Quintero,* abogado del demandante; *David Rivé Rivera,* abogado de los demandados.

## RESOLUCIÓN

Por ser nuestra jurisdicción original una limitada que no incluye el poder entender en recursos de sentencia declaratoria e *injunction* como el presente, denegamos el recurso titulado *mandamus* presentado por El Vocero de Puerto Rico, sin perjuicio de que pueda presentarlo en el foro de instancia. Art. V, Sec. 5, Const. E.L.A., L.P.R.A., Tomo 1.([1])

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Alonso Alonso no intervino. El Juez Asociado Señor Negrón García disintió

---

([1]) El Reglamento sobre Contenido Mínimo de los Estados de Situación de los Candidatos a Elección que se impugna fue promulgado por la Comisión Estatal de Elecciones el 4 de enero de 1988.

con opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto disidente del Juez Asociado Señor Negrón García, al cual se une el Juez Asociado Señor Rebollo López.

## I

Nuevamente El Vocero de Puerto Rico nos pide que expidamos un *mandamus*, esta vez dirigido contra la Comisión Estatal de Elecciones para que cumpla con el deber ministerial impuesto por el Art. 4.001(a) de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3151(a), y exija a todos los candidatos a elección que sus respectivos estados de situación financiera sean "certificado[s] por un contador público autorizado ...". Íd.

La petición, incidentalmente, conlleva anular por *ultra vires* el reglamento aprobado por la Comisión Estatal de Elecciones el 4 de enero de 1988, denominado *Reglamento sobre Contenido Mínimo de los Estados de Situación de los Candidatos a Elección* (en adelante Reglamento).

En síntesis, El Vocero de Puerto Rico nos dice que dicho reglamento desvirtúa *"el requerimiento claro y específico de la Ley Electoral,* al permitir que se presenten estados de situación que *no son certificados.* El Reglamento es nulo en tanto [y] en cuanto pretende hacer aceptables aquellos estados de situación 'compilados' o 'revisados', en los cuales el contador público autorizado no rinde una opinión porque su intervención es de mero receptor de datos y su presentación gráfica, sin cotejar la veracidad de la información

provista por el candidato". (Énfasis suplido.) Solicitud de *mandamus*, págs. 6–7.

## II

Distinto al criterio mayoritario, procede asumir jurisdicción y, en los méritos, emitir el auto solicitado. Nos explicamos.

*Primero*, procesalmente, en buena hermenéutica constitucional y legal, poseemos jurisdicción original —primera instancia— para conocer de esta petición y ella se proyecta en una dimensión tripartita: de *mandamus* —*Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); *P.P.D. v. Ferré, Gobernador*, 98 D.P.R. 338 (1970); *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264 (1960); *Martínez v. Vda. de Morales*, 72 D.P.R. 210 (1951); *Partido Popular v. Gallardo*, 56 D.P.R. 706 (1940); *Mun. de Quebradillas v. Sec. Ejecutivo*, 27 D.P.R. 147 (1919); *Negrón et al. v. El Superintendente de Elecciones*, 11 D.P.R. 366 (1906); *Palmer v. Guerra*, 9 D.P.R. 555 (1905); *Delgado v. El Consejo Ejecutivo de Puerto Rico*, 7 D.P.R. 410 (1904)— de *injunction* y de *declaración o decreto de ilegalidad*.

*Segundo*, no existe problema alguno en cuanto al aspecto de la legitimación activa (*standing*) de El Vocero de Puerto Rico. *Prensa Insular de P.R. v. Cordero, Auditor*, 67 D.P.R. 89, 102–103 (1947). Aparte de que así lo hemos reconocido, ello se desprende del propio deber establecido en la Ley Electoral de Puerto Rico. De lo contrario, ¿cuál sería el propósito legislativo de exigir que se sometan los estados de situación financiera, sino permitir su escrutinio público y divulgación?

*Tercero*, es cuestión de interés público "que las leyes se pongan en ejecución ... y el *mandamus* tiene por objeto conseguir la ejecución de un deber público ...". *Asociación de Maestros v. Pérez, Gobernador Int.*, 67 D.P.R. 848, 851 (1947).

*Cuarto*, dentro del esquema constitucional vigente, *es este Foro* —no la Comisión Estatal de Elecciones ni los tribunales de instancia— el árbitro *final* de toda controversia. *Santa Aponte v. Ferré Aguayo*, 105 D.P.R. 670 (1977); *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750 (1977).

Si este Tribunal, como máximo Foro, no está dispuesto a asumir jurisdicción y expedir un *mandamus* para "hacer cumplir la ley", ¿qué otro tribunal lo hará?

*Quinto*, es innegable cómo el factor tiempo incide. El pedido goza de urgencia. Tomamos conocimiento judicial de que el 20 de mayo de 1992 este Tribunal (con nuestro disentir) denegó otro recurso de *mandamus* (*El Vocero v. Hernández Agosto*, 130 D.P.R. 501 (1992)). Allí, iba dirigido a que todos los legisladores cumplieran con la ley y sometieran sus informes financieros a la Oficina de Ética Gubernamental. La mayoría, como fundamento, adujo que dicho rotativo podía utilizar los estados financieros sometidos a la Comisión Estatal de Elecciones como fuente alterna de información.

"Debemos repetirlo *ad nauseam*, aunque sólo consista en recordar lo admitido por todo el mundo, porque ningún sistema de derecho puede vivir si, a base de formalismos procesales que son innecesarios, se ahogan las posibilidades de hacer justicia sustancial." (Escolio omitido.) *Piovanetti v. Vivaldi*, 80 D.P.R. 108, 123 (1957).

## III

Aclarada nuestra jurisdicción, notamos que la controversia es una pura de derecho. No requiere prueba alguna.

Incuestionablemente, la Comisión Estatal de Elecciones tiene el deber ministerial de exigir el cumplimiento de la Ley Electoral de Puerto Rico; a su vez, tienen los candidatos la obligación de someter sus estados de situación certificados por un Contador Público Autorizado. El texto legal

es prístino. No estamos ante un asunto que requiera interpretación. No hay, ni debería haber, margen para diferencias. Se trata de un deber de carácter público, donde "la misma ley substituye al requerimiento y la omisión en cumplir el deber requerido es equivalente a una negativa". *Martínez Nadal v. Saldaña*, 33 D.P.R. 721, 736 (1924).

Por todos es conocido el principio de que un reglamento contrario a la ley —y cualquier práctica a su amparo— es nulo. La presentación de un estado financiero certificado por un Contador Público Autorizado garantiza el cumplimiento de unos requisitos y parámetros mínimos acordes con los principios que informa la buena práctica de contabilidad. No hacerlo, sencillamente, es desnaturalizar el texto y espíritu de la Ley Electoral de Puerto Rico; es dejar en "veremos" la veracidad y utilidad de cualquier información financiera sometida.

Como peticionario, El Vocero de Puerto Rico, bajo el palio constitucional de libertad de prensa y expresión, y en el descargo de su legítima función de mantener a la ciudadanía informada sobre los asuntos oficiales de gobierno, tiene derecho de acceso y a que la información financiera sea confiable según lo dispone el Art. 4.001 de la Ley Electoral de Puerto Rico, *supra*. Los criterios establecidos por la Comisión Estatal de Elecciones en el Reglamento dan al traste con ese derecho de acceso a la información. A fin de cuentas, la Comisión Estatal de Elecciones sólo está facultada para "establece[r] mediante reglamento el contenido mínimo de los estados de situación" —Art. 4.001 de la Ley Electoral de Puerto Rico, *supra*— no para eximir del requisito de certificación por un Contador Público Autorizado.

En resumen, es improcedente la desestimación solicitada por la Comisión Estatal de Elecciones.

La petición de *mandamus* es clarísima; sus méritos, evidentes. Sencillamente va dirigida a que dicho organismo cumpla con la Ley Electoral de Puerto Rico. El alto grado de interés público del asunto, la necesidad de una

530

pronta adjudicación y la naturaleza jurídica de la controversia —que no exige prueba— hacen de esta petición una óptima que debió ser atendida por este Foro.