PARTIDO POPULAR ET AL., peticionarios, *v.* CARLOS GALLARDO, en su carácter de SECRETARIO EJECUTIVO DE PUERTO RICO, demandado.

Núm. 338.—*Sometido:* Abril 30, 1940. *Resuelto:* Mayo 8, 1940.

*Rodolfo Ramírez Pabón, V. Gutiérrez Franqui, F. M. Susoni, Jr., Miguel Parga, Jorge V. Toledo, Edelmiro Soldevila, Jaime J. Saldaña y Samuel R. Quiñones,* abogados de los peticionarios; *Hon. Procurador General George A. Malcolm y Luis Janer, Fiscal Auxiliar del Tribunal Supremo,* abogados del demandado; *Dubón & Ochoteco,* abogados del Partido Liberal Puertorriqueño, interventor.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Los demandantes han recurrido a la jurisdicción original de este tribunal en solicitud de un auto de *mandamus* dirigido al Secretario Ejecutivo de Puerto Rico, Hon. Carlos Gallardo, ordenándole que acepte las peticiones que para la inscripción del Partido Popular han archivado en su oficina ciertos electores del municipio de Río Piedras y que proceda a inscribir dicho partido y sus candidatos conforme dispone la ley.

Alegan los demandantes que en las elecciones generales de 1936 el voto total para todos los candidatos para Comisionado Residente en los Estados Unidos en el precinto electoral de Río Piedras fué de 12,131 electores; que con anterioridad al 19 de enero de 1940, más de 1,250 electores capacitados del precinto electoral de Río Piedras, debidamente inscritos en dicho precinto, presentaron en la Secretaría Ejecutiva de Puerto Rico sendas peticiones en las cuales se expresaron las circunstancias que requiere la ley, entre ellas los nombres y residencias de los candidatos, cargos para los cuales eran respectivamente nombrados, y nombre y emblema del partido político cuya inscripción interesaban, radicando también, los candidatos nombrados, una declaración jurada por cada uno de ellos, manifestando su propósito de aceptar y desempeñar sus respectivos cargos en caso de ser electos.

El Secretario Ejecutivo aceptó las peticiones e inscribió el partido y los candidatos nombrados, pero advirtiendo luego que más de 200 de dichas peticiones habían sido juradas en Río Piedras ante los Jueces Municipales de Cayey y Patillas respectivamente, y actuando de acuerdo con la opinión legal del Procurador General de Puerto Rico sosteniendo que los juramentos autorizados por dichos jueces municipales fuera de sus respectivos distritos eran nulos, canceló la inscripción del Partido Popular en Río Piedras,

basando su resolución en que siendo nulas las peticiones juradas ante dichos funcionarios por carecer de juramento válido, las restantes archivadas no eran suficientes en cantidad para cubrir el 10% requerido por la sección 37 de la Ley Electoral vigente, lo que notificó al Partido Popular por conducto de su Presidente en la siguiente comunicación:

"LA FORTALEZA

Puerto Rico.

San Juan, 19 de enero de 1940.

"Sr. Luis Muñoz Marín,
Presidente Partido Popular,
Altos de la Democracia,
San Juan, Puerto Rico.

"Señor:

"Me refiero a nuestra carta del día 26 de diciembre próximo. pasado en relación con la impugnación de la inscripción del Partido Popular en Río Piedras para informarle que acabamos de recibir del Procurador General de Puerto Rico, en contestación a nuestra consulta, una opinión en la que sostiene que los Jueces Municipales de Cayey y Patillas, Sres. Ángel M. Díaz y Miguel Bauzá, carecen de facultad para recibir juramentos en Río Piedras; que son nulos los juramentos por ellos tomados dentro de dicho distrito judicial, y que, finalmente, son nulas las peticiones de inscripción en las cuales aparecen dichos juramentos.

"En tal virtud, esta oficina resuelve que las peticiones del Partido Popular en Río Piedras juradas ante los Jueces arriba mencionados, son nulas y sin valor. Por lo tanto, la inscripción del Partido Popular en Río Piedras queda cancelada por no haberse radicado peticiones en debida forma, de acuerdo con la ley, en número suficiente para cubrir el 10% que requiere la sección 37 de la Ley Electoral vigente.

"Atentamente,

(Fdo.)  C. Gallardo,
Secretario Ejecutivo.
By: D. Brown,
*Assistant Executive Secretary.*"

Alegan los demandantes que después del 19 de enero último, fueron presentadas al Secretario Ejecutivo de Puerto Rico más de 100 peticiones en adición a las mencionadas, juradas todas ante los Jueces Municipales de Río Piedras, alcanzando así el número total de peticiones a más de 1350, de las cuales más de 200 no adolecen del defecto señalado por el demandado.

Fundamentando su petición de *mandamus*, alegan los demandantes que el acto de administrar un juramento es de carácter ministerial y que por consiguiente la facultad que la ley concede a los jueces municipales para autorizarlos no está limitada a su distrito judicial municipal; que el Secretario Ejecutivo de Puerto Rico carecía y carece de facultad para cancelar las referidas peticiones y para cancelar la inscripción del Partido Popular en Río Piedras, porque la facultad que para inscribir candidatos y partidos por petición le confiere la Ley Electoral, es de naturaleza ministerial, estando limitada a recibir las candidaturas por petición que se radiquen en su oficina, careciendo de discreción en cuanto a dichas peticiones concierne y no pudiendo tomar resolución alguna en cuanto a ellas después de radicadas en su oficina y menos aún después de aceptadas por él; que la sección 37 de la Ley Electoral, según fué enmendada por la Ley número 74 de 30 de julio de 1923 (Leyes de ese año, pág. 561), es inconstitucional (expresando los motivos), por lo que bastarían 200 peticiones para la inscripción del Partido Popular y sus candidatos en el precinto de Río Piedras.

Señalado el 18 del mes pasado a las dos de la tarde para oír a las partes sobre la procedencia del recurso, comparecieron las partes, el demandado representado por el Procurador General, quien radicó una moción oponiéndose a que asumamos jurisdicción original del caso, y sin renunciar a dicha moción, en el mismo acto presentó una excepción previa impugnando la suficiencia de la solicitud de *mandamus*. Al dar principio a la audiencia, el Partido Liberal solicitó

permiso para intervenir con carácter de *amicus curiae,* y permitida su intervención, radicó también un escrito de excepción previa impugnando la suficiencia de la petición de *mandamus,* quedando sometido el caso luego de oír informes orales, cuando el 30 del mes pasado radicaron los demandantes su réplica al alegato del *amicus curiae.*

■ Como cuestión previa, determinaremos en primer término si las circunstancias concurrentes en este caso ameritan que asumamos la jurisdicción original invocada por los demandantes.

Se trata de un pleito contra uno de los principales funcionarios del Gobierno Insular; las cuestiones envueltas son de gran interés público, y, sobre todo, el derecho de los demandantes a una razonable oportunidad de presentar nuevas peticiones en caso de sostenerse la contención del demandado, requiere una pronta y definitiva resolución, lo cual no podría conseguirse si el caso se radicase originalmente en la Corte de Distrito y hubiese que esperar hasta que en apelación pueda ser resuelto por esta corte.

Consideradas las circunstancias concomitantes y el hecho adicional de que en ocasiones anteriores hemos asumido jurisdicción en casos similares, precisamente contra el Secretario Ejecutivo (*Martínez Nadal* v. *Saldaña, Secretario Ejecutivo,* 38 D.P.R. 446), opinamos que el uso de una sana discreción exige que asumamos la jurisdicción invocada por los demandantes. Pasemos ahora a disponer de las cuestiones legales planteadas.

■ La primera es: ¿Tiene facultad un juez municipal para autorizar juramentos fuera de la demarcación territorial de su distrito judicial municipal?

El artículo 2 de la ley autorizando a determinados funcionarios para que tomen declaraciones juradas, etc. (Comp. 13), según fué enmendado por la ley de 9 de marzo de 1910 (Leyes de ese año, pág. 78, Comp. 13), al determinar qué

funcionarios están autorizados para tomar juramentos, declaraciones juradas, etc., en lo pertinente dispone:

"Todo juramento, declaración jurada o afirmación que sea necesaria o conveniente o que la ley requiera, podrá prestarse en Puerto Rico y expedirse una certificación al efecto, ante cualquier magistrado de la Corte Suprema, o ante cualquier juez de una corte de distrito, o ante cualquier secretario de cualesquiera de las cortes antedichas, o ante cualquier juez de paz o municipal o ante cualquier notario público, o ante cualquier comisionado de los Estados Unidos para el distrito de Puerto Rico; . . ."

En el caso de *Soto* v. *Tesorero de Puerto Rico,* 53 D.P.R. 950, 953, invocado por una y otra partes, se impugnó la facultad del subsecretario de la Corte de Distrito de San Juan para autorizar un juramento que había de presentarse en relación con un pleito que se tramitaba en la Corte de Distrito de Mayagüez, alegando el apelante que el subsecretario de una corte de distrito no puede autorizar juramentos en relación con documentos que han de utilizarse en pleitos pendientes en una corte distinta de aquélla donde el funcionario ejerce su cargo. Sosteniendo la facultad del subsecretario y la consiguiente validez del juramento, dijimos entonces:

"La ley sobre declaraciones juradas (*affidavits,* juramentos y afirmaciones), en su artículo 2, según fué enmendado por la ley de 9 de marzo de 1910, autoriza a cualquier secretario de una corte de distrito o del Tribunal Supremo para tomar juramentos y no establece diferencia entre su autoridad a este efecto y la conferida a los jueces del Tribunal Supremo, jueces de distrito y jueces municipales y de paz. No existe disposición alguna, como antes indicamos, que limite la facultad de los secretarios de las cortes de distrito para tomar juramentos a pleitos ó procedimientos que se tramitan ante la corte donde ellos actúan. Sólo se ha resuelto en el caso de *Pérez* v. *López,* 18 D.P.R. 651, que un secretario de una corte municipal no tiene facultades para tomar el juramento de una demanda que ha de presentarse ante una corte de distrito; pero la ley que autoriza a los secretarios de las cortes municipales a tomar juramentos es la de 8 de marzo de 1906, pág. 101, distinta de la sección 2 antes citada, que autoriza a los secretarios de las cortes de distrito, jueces del Supremo, etc., para administrar juramentos."

Al así expresarnos, teníamos en mente la cuestión ante nosotros, es decir, si una declaración autorizada por el subsecretario de una corte de distrito puede ser utilizada o presentada en cualquier parte de la Isla de Puerto Rico fuera de la jurisdicción territorial de la corte en que dicho subsecretario ejerce sus funciones. De ahí que, limitando el lenguaje quizá un tanto amplio de la primera parte del párrafo transcrito, dijéramos a continuación:

"No existe disposición alguna, como antes indicamos, *que limite la facultad de los secretarios de las cortes de distrito para tomar juramentos a pleitos o procedimientos que se tramitan ante la corte donde ellos actúan.*"

La facultad en sí es igual en todos los funcionarios judiciales cualquiera que sea su jerarquía. Es el artículo 30 del Código de Enjuiciamiento Civil el que limita, no la facultad en sí, sino el territorio dentro del cual pueden ejercerla aquellos funcionarios judiciales que no sean Jueces del Tribunal Supremo o de las cortes de distrito, al prescribir:

"Art. 30. Los Jueces de la Corte Suprema y los Jueces de las cortes de distrito *tienen facultad en cualquier parte de la isla* para recibir y certificar:
"1.         .         .         .         .         .         .         .
"2. Una declaración jurada o deposición (la edición española dice 'testimonio') que haya de utilizarse en esta Isla." (Bastardillas y paréntesis nuestros.)

Guarda silencio el citado precepto legal con respecto a los demás funcionarios judiciales autorizados para tomar juramentos, por lo que al interpretar el alcance del citado artículo 30, debe entenderse que estos últimos funcionarios no pueden ejercer esa facultad fuera de la jurisdicción territorial de la corte para la cual han sido nombrados. *Expressio unius est exclusio alterius.*

Si la intención del legislador hubiera sido conferir igual facultad a los demás funcionarios judiciales, fácil le hubiera sido expresar su propósito, ya mencionándolos juntamente con los Jueces del Tribunal Supremo y los de las cortes de

distrito, o lo que hubiera sido más fácil, eliminando total-
mente el inciso 2 del artículo 30, supra, quedando entonces
como única disposición legal sobre la materia el artículo 2
de la ley primeramente mencionada, que, como hemos visto
por lo transcrito, no establece diferencia alguna en la facul-
tad de los distintos funcionarios judiciales para tomar jura-
mentos.

▇ Se arguye por los peticionarios que el artículo 2 de
la ley general sobre declaraciones juradas, etc., según fué
enmendado en 1910, es de fecha posterior al artículo 30 del
Código de Enjuiciamiento Civil, y que por consiguiente dicho
artículo ha quedado tácitamente derogado.

Al así argumentar, olvidan los demandantes que el ar-
tículo 2 en cuestión, tal y como fué redactado originalmente
en 1903, decía así:

"Art. 2. Todo juramento, declaración jurada o afirmación que
sea necesaria o que la ley requiera podrá prestarse ante cualquier
magistrado de la Corte Suprema, o ante cualquier Juez de una Corte
de Distrito, o ante cualquier Secretario de cualesquiera de las ante-
dichas Cortes, o ante cualquier Juez de Paz o Municipal, o ante
cualquier Notario Público, cuyos funcionarios podrán expedir la cer-
tificación correspondiente."

De manera, pues, que el artículo 2 en 1903 estaba redac-
tado, en lo que a la facultad de los funcionarios para tomar
juramentos se refiere, sustancialmente igual que como quedó
a virtud de la enmienda de 1910. Ambos preceptos legales,
el del artículo 2 y el del 30 del Código de Enjuiciamiento
Civil, han venido subsistiendo desde 1904 sin que la enmienda
de 1910 antes referida alterase en forma alguna la situación
legal prevaleciente con respecto a ellos. Puesto que las
derogaciones tácitas no son favorecidas por la ley, y como
nada impide que uno y otro preceptos coexistan, no podemos
convenir con los demandantes en que el artículo 30, supra,
ha sido derogado por la ley general anteriormente mencio-
nada.

En el caso de *Kollock* v. *Russell,* 294 N.Y.S. 712, confirmado por la *Appellate Division* de Nueva York en *In re Kollock,* 294 N.Y.S. 714, se sostiene que los métodos exigidos por el estatuto para autenticar las peticiones de nominación tienen por objeto evitar la posibilidad de fraude, engaño o confusión, y deben ser estrictamente cumplidos.

A nuestro juicio, los juramentos autorizados por los jueces municipales de Cayey y Patillas fuera de sus respectivos distritos judiciales municipales son nulos, y exigiendo la Ley Electoral que las peticiones de inscripción sean juradas, carecen de tal requisito las que ante dichos funcionarios se pretendió jurar y son por consiguiente nulas.

██ La segunda cuestión suscitada por los demandantes es: ¿Está el Secretario Ejecutivo autorizado por la ley para rechazar una petición que no reuna las condiciones prescritas por la ley, y puede él ejercer tal facultad y dejar sin efecto la aceptación de peticiones después de haberlas aceptado e inscrito el partido?

En nuestra opinión tiene una y otra facultades. La Ley Electoral, en su sección 37, según fué enmendada por la Ley núm. 114, de 15 de mayo de 1936 (Leyes de ese año, pág. 589), detalladamente determina los requisitos que debe llenar la petición de inscripción, y la que no reuna tales condiciones no es la petición que contempla la ley y por consiguiente no debe ser aceptada. Es deber del Secretario Ejecutivo examinar las peticiones para determinar si reunen los requisitos legales, entre los cuales se halla el de que "cada una de dichas peticiones deberá ser debidamente jurada ante un funcionario judicial de Puerto Rico autorizado para tomar juramentos." Véase por vía de ilustración el caso de *Clark* v. *Nash,* 19 A.L.R. 304, 307.

Consciente el legislador de la facultad que el artículo 37 de la Ley Electoral concede al Secretario Ejecutivo de Puerto Rico, la limitó en el párrafo final de dicho artículo en la siguiente forma:

"El Secretario Ejecutivo no está autorizado y no tendrá poder de juzgar sobre la elegibilidad de cualquier candidato cuyo nombramiento se archive en su oficina."

Si ninguna facultad se le hubiera concedido al Secretario Ejecutivo, ¿a qué fin conduciría limitar un poder que no existe?

El hecho de que inadvertidamente hubiera aceptado como válidas peticiones que no reunían los requisitos legales no era óbice para que al advertir el error lo subsanase inmediatamente, dando a los peticionarios una oportunidad de presentar nuevas peticiones, para lo cual la propia sección 37 les garantiza un plazo que no expirará hasta las doce del mediodía del 25 de agosto de 1940.

█ Réstanos considerar ahora la alegada inconstitucionalidad del artículo 37 de la Ley Electoral en tanto en cuanto exige que el número de peticiones debe ser igual al 10% del voto total depositado para todos los candidatos para Comisionado Residente en los Estados Unidos, en el precinto, municipio, distrito o isla, según fuere el caso; en las elecciones precedentes respectivamente.

Corpus Juris expone el criterio que debe aplicarse para determinar la constitucionalidad de una ley de esta índole. Dice así:

"*Número de firmantes.*—El requisito en cuanto al número de peticiones es preceptivo. La determinación de lo que deba entenderse como un número razonable de firmantes es cuestión reservada a la asamblea legislativa y no a los tribunales; pero la asamblea legislativa no puede imponer limitaciones irrazonables o innecesarias que puedan privar a cuerpos independientes, de igual oportunidad de hacer nominaciones." 20 C. J. 111, sec. 107, y casos citados.

Un estatuto del Estado de Nueva York exige que las nominaciones independientes para cargos por elección en cualquier subdivisión política del Estado sólo pueden hacerse a petición del 5% del número total de votos depositados para Gobernador en la última elección, disponiendo además que en ningún caso se exigirá más de tres mil peticiones. Se

trataba de la nominación de un juez municipal para la ciudad de Nueva York y se alegaba que el estatuto no era razonable y por consiguiente era inconstitucional, toda vez que requería para la nominación de un juez municipal el mismo número de peticiones que para el cargo de alcalde de Nueva York o de fiscal de un condado, que son mucho más importantes que el de juez municipal. Resolvió la corte que el argumento de los apelantes debía dirigirse a la asamblea legislativa y no a los tribunales de justicia, y confirmó la sentencia que denegó el auto de *mandamus* por no haberse presentado el número de peticiones exigido por la ley. *Matter of Greenwald* v. *Boyle,* 179 App. Div. 672, confirmado en una opinión *per curiam* de la Corte de Apelaciones de Nueva York en 221 N.Y. 688; *In re Richards, et al.,* 117 N.E. *(Court of Appeals of New York)* 615.

No vamos tan lejos como los casos arriba citados al sostener que la razonabilidad del número de peticiones exigido por la ley es cuestión reservada exclusivamente a la asamblea legislativa. Opinamos, por el contrario, que las cortes tienen la facultad de declarar inconstitucional tanto éste como cualquier otro estatuto, pero para que tal facultad se ejercite, teniendo en cuenta la presunción de constitucionalidad que existe a favor de las leyes y la mutua consideración que debe existir entre las tres ramas del Gobierno, es preciso que el estatuto sea tan manifiestamente irrazonable que equivalga a la negación de un derecho.

En el caso de autos, el número de peticiones que requiere la sección 37 de la Ley Electoral no traspasa los límites de la razonabilidad. La mejor prueba de ello es la propia solicitud de *mandamus* en este caso radicada. No solamente alegan los demandantes que han archivado en Secretaría Ejecutiva la cantidad de peticiones requerida por la ley— que en este caso particular sería 1213—si que han radicado más de 1350 peticiones (Petición, párr. 12). Además, conforme aparece del párrafo primero de la petición, el partido demandante ha registrado en Secretaría candidatos por

petición para las próximas elecciones "en más de las tres cuartas partes de los precintos electorales de todo Puerto Rico y en más del 10% del voto total depositado para todos los candidatos para el cargo de Comisionado Residente de Puerto Rico en los Estados Unidos en las últimas elecciones precedentes."

En tales circunstancias, ¿cómo es posible sostener que el número de peticiones exigidas por la sección 37, supra, sea tan exagerado que equivalga a la negación del derecho a inscribir candidatos por petición? La realidad elocuentemente demuestra lo contrario.

Arguyen los demandantes que en el caso de *Martínez Nadal v. Saldaña, Secretario Ejecutivo,* 38 D.P.R. 446, este tribunal declaró inconstitucional la sección 37 que nos ocupa.

Tal aseveración no es exacta. Lo único que en dicho caso se dijo sobre el particular aparece en la página 462 y fué como sigue:

"Tal vez si la ley sobre inscripción por petición hubiese sido más liberal, quizás podría decirse algo en favor del nombramiento de candidatos por petición. La Legislatura no ha creído prudente enmendar la sección 37 que exige el 10% del voto total, aun mediante petición, a pesar de que se considera crecido y que *un juez de esta Corte en 1924 expresó su criterio de que tal disposición era inconstitucional.*"

El párrafo transcrito dista mucho de expresar que este tribunal haya hecho tal declaración de inconstitucionalidad. Parece oportuno agregar aquí que aunque ocho años después la Asamblea Legislativa enmendó la sección 37 de la Ley Electoral (Ley núm. 114 de 15 de mayo de 1936, (2) pág. 589), no estimó prudente alterar el requisito del 10%.

Finalmente alegan los peticionarios que la parte de la sección 37 que fija el número de peticiones requeridas para el nombramiento de candidatos por petición, es nula por incierta, puesto que dicha sección exige que el 10 por ciento se compute sobre el voto total depositado para todos los candidatos para "Comisionado a los Estados Unidos", y

como ese cargo no existe en Puerto Rico, no hay base alguna para calcular el 10 por ciento a que la misma se refiere.

Tal argumento es por demás sutil. La Ley Orgánica crea el cargo de "Comisionado Residente en los Estados Unidos," haciéndolo de elección popular. No se elige ningún otro Comisionado a los Estados Unidos. Luego, fácil es comprender que el "Comisionado a los Estados Unidos" a que se refiere la sección 37 de la Ley Electoral no es otro que el "Comisionado Residente en los Estados Unidos" creado por la Ley Orgánica.

*Por lo expuesto, procede declarar con lugar la excepción previa de falta de causa de acción y desestimar la petición de mandamus.*