EL VOCERO DE PUERTO RICO, peticionario, *v.* HON. MIGUEL A. HERNÁNDEZ AGOSTO *ET ALS.*, demandados.

*Número:* MD-92-9          *Resuelto:* 20 de mayo de 1992

*Juan R. Marchand Quintero*, abogado del peticionario; *Nicolás Nogueras, Hijo, pro se.*

## RESOLUCIÓN

Vista cuidadosamente la solicitud de *mandamus* del peticionario, El Vocero de Puerto Rico, el Tribunal no encuentra justificado el ejercicio de nuestra jurisdicción original.

El peticionario invoca nuestra jurisdicción original basándose en la *urgencia* del remedio solicitado, "en vista de la proximidad de las primarias a celebrarse el domingo 31 de mayo de 1992" y "del derecho constitucional al voto informado que tiene la ciudadanía de Puerto Rico". Solicitud de *mandamus*, pág. 7. Resulta, sin embargo, que prácticamente todos los demandados ya han presentado su particular estado financiero ante la Comisión Estatal de Elecciones en cumplimiento de lo dispuesto por la Ley Electoral de Puerto Rico. Según información que es de conocimiento público, setenta y ocho (78) de los ochenta y dos (82) legisladores demandados son, de nuevo, candidatos a puestos electivos, y todos han sometido estados de situación financiera ante la Comisión Estatal de Elecciones hasta el 18 de mayo de 1992.[1] Esos estados financieros están disponibles al peticionario, que puede de ese modo lograr pronta y rá-

[1] La Ley Electoral de Puerto Rico le requiere a todo candidato a cargo electivo someter un estado de situación financiera (16 L.P.R.A. sec. 3151). Tratándose de expedientes públicos, tomamos conocimiento judicial de que dichos estados están sometidos ante la Comisión Estatal de Elecciones.

pidamente lo que solicita en esta petición de *mandamus*.([2]) Siendo ello así, no existen las circunstancias que reiteradamente hemos requerido como condición para ejercer nuestra jurisdicción original. *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264 (1960); *Partido Popular v. Gallardo*, 56 D.P.R. 706 (1940); *Prensa Insular de P.R. v. Cordero, Auditor*, 67 D.P.R. 89 (1947); *Mun. de Quebradillas v. Sec. Ejecutivo*, 27 D.P.R. 147 (1919). Véase, también, D. Rivé Rivera, *Recursos Extraordinarios*, 1ra ed., Atlanta, Darby Printing Company, 1989, pág. 105.

*Se deniega el ejercicio de nuestra jurisdicción original y se ordena el traslado de la solicitud de "mandamus" al Tribunal Superior, Sala de San Juan.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió un voto disidente, al cual se unió el Juez Asociado Señor Rebollo López.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto disidente del Juez Asociado Señor Negrón García, al cual se une el Juez Asociado Señor Rebollo López.

I

Disentimos. La legitimación activa (*standing*) del peticionario El Vocero de Puerto Rico, a través de su Director

---

([2]) El peticionario solicita taxativamente que se le ordene a los demandados proveerle al peticionario sus estados financieros, y que ello se haga antes del 31 de mayo de 1992, cuando se celebran primarias en Puerto Rico. Expresamente dice el peticionario que no está solicitando que se adopte el reglamento que debió ser adoptado ni ningún otro remedio.

Asociado Germán Martínez Negrón, en virtud del "interés especial" que ostenta como administrador y editor de un periódico, es incuestionable. *Prensa Insular de P.R. v. Cordero, Auditor*, 67 D.P.R. 89, 102–103 (1947).

En virtud de los claros términos de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental), Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1801 *et seq.*), los miembros de la Asamblea Legislativa se autoimpusieron la obligación de adoptar un código de ética o enmendar sus reglamentos, incorporando los principios éticos del estatuto, ello dentro del año de su vigencia, y subsiguientemente someter sus informes financieros a la Oficina de Ética Gubernamental.

A la luz de su carácter obligatorio, la omisión de la Asamblea Legislativa respecto a adoptar el aludido código de ética o reglamento, sólo puede significar una negativa a regirse por los principios éticos y de sana administración pública contenidos en la Ley de Ética Gubernamental. La situación es intolerable. Frente a ésta, dichos principios aplican supletoriamente. Lo contrario crearía un vacío que, por razonamiento y omisión circulares, derrotaría el espíritu y los propósitos fundamentales de dicha ley.

La negativa de los legisladores a someter sus informes se proyecta, preliminarmente, como la situación clásica para judicialmente compelerlos mediante *mandamus*. Una vez la Ley de Ética Gubernamental fue refrendada por la Asamblea Legislativa y el Primer Ejecutivo, todos los legisladores quedaron sometidos a sus disposiciones. Su estricto acatamiento no puede estar sujeto a la conveniencia personal o al buen o mal juicio individual.

## II

La presentación de estados financieros ante la Comisión Estatal de Elecciones, como fuente alterna de información, no es excusa para aceptar este incumplimiento. Aparte de

que no cubre a todos los miembros de la Legislatura, se trata de normas, trámites y sanciones *distintas e independientes*: el deber de divulgación bajo la Ley de Ética Gubernamental es anual, *no cuatrienal*, como dispone la Ley Electoral de Puerto Rico.

En vista de la urgencia del recurso, la legitimación activa del peticionario y el derecho de acceso a información —*Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982)— debimos acoger en jurisdicción original el recurso y conceder un término breve a los demandados Hons. Miguel Hernández Agosto *et als.* para que expusieran sus razones por las cuales no deberíamos expedir el *mandamus*.

El traslado al Tribunal Superior, Sala de San Juan, constituye un mal precedente. Sólo augura más demora y, con ello, la continua violación de la Ley de Ética Gubernamental.