SENTENCIA
El 28 de abril de 2006, el Contralor del Estado Libre Asociado de Puerto Rico, Hon. Manuel Díaz Saldaña, presentó ante nosotros una petición de mandamus en jurisdicción original. Nos solicita que ordenemos al Gobernador del Estado Libre Asociado, Hon. Aníbal Acevedo Vilá, a dejar sin efecto su instrucción al Secretario de Hacienda, *360 Juan Carlos Méndez Torres, de autorizar únicamente el desembolso del setenta y cinco por ciento de los gastos de nómina y demás gastos operacionales de la Oficina del Contralor, proyectados para mayo y junio del año en curso.
En vista de los acontecimientos suscitados entre las Ra-mas Ejecutiva y Legislativa después del inicio de este caso, de la legislación aprobada recientemente para conjurar los problemas fiscales que atraviesa el Gobierno del Estado Libre Asociado de Puerto Rico, y dado que el recurso de mandamus es discrecional, altamente privilegiado, denegamos el auto solicitado.
I
El 26 de abril de 2006, el Gobernador emitió su Orden Ejecutiva Núm. 10, Boletín Administrativo OE-2006-10 (Orden Ejecutiva). Expuso en ésta que, a pesar de los esfuerzos realizados por la Rama Ejecutiva, los fondos estimados disponibles para cerrar el año fiscal 2005-2006 resultarían insuficientes para cubrir las operaciones del Gobierno para dicho período, según había informado el Secretario de Hacienda. Añadió que, de continuar efectuándose de manera corriente los desembolsos correspondientes a todas las entidades que se nutrían del Fondo General, el cierre total del Gobierno antes de que culminara el año fiscal sería inminente. En vista de ello, expresó que era indispensable mantener un nivel mínimo de funcionamiento gubernamental que incluyera la operación de los elementos esenciales de las agencias de seguridad y de salud públicas, de manera que se pudiera preservar la razón de estado, la salud y la seguridad del pueblo.
Conforme a lo anterior, el Gobernador instruyó al Secretario de Hacienda a autorizar los desembolsos con cargo al Fondo General de acuerdo con determinadas directrices incorporadas en la referida Orden Ejecutiva. Entre éstas, ordenó que sólo se desembolsara a favor de la Oficina del *361 Contralor de Puerto Rico el setenta y cinco por ciento de los gastos de nómina proyectados para mayo y junio de 2006. Además, dispuso que la Oficina del Contralor recibiría los desembolsos correspondientes a los demás gastos operacionales en proporción a lo asignado para cubrir su nómina.
Según los términos establecidos en el séptimo “POR TANTO” de la Orden Ejecutiva, ésta tendría vigencia desde 1 de mayo de 2006 hasta 30 de junio de 2006, “salvo que se disponga por ley para el ingreso de fondos adicionales que sean suficientes para cumplir con todas las obligaciones del presente año fiscal”. (Énfasis suplido.) Orden Ejecutiva, supra, pág. 4.
Así las cosas, el Contralor presentó ante nos el recurso del epígrafe contra el Hon. Aníbal Acevedo Vilá como Gobernador de Puerto Rico y contra Juan Carlos Méndez Torres, en su capacidad oficial como Secretario de Hacienda (demandados). Adujo, esencialmente, que el Gobernador no tenía la facultad constitucional ni legal para reducir el presupuesto de la Oficina del Contralor, ya que ésta operaba por mandato constitucional de forma independiente a la Rama Ejecutiva. Solicitó, por lo tanto, que se le ordenara al mandatario dejar sin efecto aquella parte de la Orden Ejecutiva que instruía el desembolso exclusivo del setenta y cinco por ciento de los gastos de nómina y demás gastos operacionales de la Oficina del Contralor, proyectados para los últimos meses del año fiscal 2005-2006. Igualmente, reclamó que se le ordenara al Secretario de Hacienda a certificar como disponible el presupuesto asignado originalmente a dicha oficina.
El Contralor acompañó su petición con uña Solicitud de Orden Provisional en Auxilio de Jurisdicción. Argumentó que tenía altas probabilidades de prevalecer en los méritos del caso y que no había otro remedio en ley para evitar la violación constitucional del Gobernador, la cual causaría un daño irreparable. A tenor con lo alegado, solicitó la ex-pedición de una orden interlocutoria que prohibiera a los *362 demandados poner en vigor la Orden Ejecutiva, en lo que a la Oficina del Contralor respecta.
Posteriormente, los demandados comparecieron a oponerse a la solicitud de orden provisional en auxilio de jurisdicción y solicitaron la desestimación de la petición de mandamus presentada por el Contralor. En síntesis, adujeron que el caso presentaba una controversia prematura debido a que el proceso político estaba operando en búsqueda de soluciones a la crisis gubernamental, siendo ésta, además, una cuestión política que no era susceptible de ser resuelta por los tribunales. Asimismo, sostuvieron que el Contralor no tenía capacidad legal ni legitimación activa para instar el recurso, ya que la Ley Orgánica de la Oficina del Contralor no se la concedía y su alegado daño era generalizado.
Analizados los escritos presentados hasta el momento, el 2 de mayo de 2006 concedimos al Contralor un término para que se expresara en torno a los argumentos de los demandados. Éste así lo hizo. En su réplica expuso que la controversia estaba madura, debido a que los efectos de la Orden Ejecutiva ya se estaban experimentando en la Oficina del Contralor; que el caso no presentaba los elementos requeridos para catalogar la controversia como una cuestión política, y que el Contralor posee tanto legitimación activa como capacidad jurídica para instar el pleito. Posteriormente, el Contralor reiteró su solicitud de orden provisional en auxilio de jurisdicción. Los demandados nuevamente se opusieron.
Mientras se llevaba a cabo este trámite judicial, el 8 de mayo de 2006, el Hon. Aníbal Acevedo Vilá y los Presidentes de las cámaras legislativas, Hon. Kenneth McClintock Hernández y Hon. José Aponte Hernández, designaron conjuntamente una Comisión Especial como parte de la búsqueda de soluciones a los problemas fiscales y presupuestarios del Gobierno de Puerto Rico. Esta Comisión Especial rindió un informe con sus recomendaciones el 10 de *363 mayo del presente año. Véase el Informe de la Comisión Especial designada por el Gobernador, Presidentes del Senado y la Cámara de Representantes de 10 de mayo de 2006. Posteriormente, tanto la Cámara de Representantes como el Senado aprobaron diversas medidas legislativas para atender la situación económica del Gobierno, las cuales fueron firmadas por el Gobernador.(1)
Con mayor pertinencia al caso de autos, el 13 de mayo de 2006 se aprobó la Ley Núm. 90, conocida como la Ley para el Financiamiento del Déficit Gubernamental del 2006. En su Art. 2, la Asamblea Legislativa dispuso:
Se autoriza al Banco Gubernamental de Fomento a otorgar un préstamo al Departamento de Hacienda por la cantidad máxima de $741,000,000.00 para el pago de nómina, los gastos operacionales del gobierno central y aliviar el flujo de caja de dicho departamento como parte del déficit gubernamental correspondiente al año fiscal 2005-2006, según recomendado por el Informe emitido por la Comisión Especial Designada por el Gobernador, Presidentes del Senado y la Cámara de Representantes, emitido con fecha de 10 de mayo de 2006. http://www.lexjuris.com/lexlex/Leyes2006/lexl2006090.htm
Igualmente, se autorizó al Secretario de Hacienda a efectuar desembolsos con cargo a dicho financiamiento para los gastos allí indicados, los cuales incluyen el gasto de nómina y los gastos operacionales del gobierno central. Art. 3 de la Ley Núm. 90, supra.
Con el mismo propósito, además, se aprobó la Resolución Conjunta Núm. 119 de 13 de mayo de 2006 mediante la cual se facultó al Secretario de Hacienda a desembolsar *364 a las entidades gubernamentales afectadas por la Orden Ejecutiva los fondos generados por la Resolución Conjunta Núm. 118 de 2 de mayo de 2006, entre otros fondos, para que todos los empleados públicos regresaran a su taller de trabajo. Asimismo, dichas cantidades iban dirigidas a garantizarle a estos empleados el pago de una compensación equivalente a su salario correspondiente a la quincena de trabajo iniciada el 1 de mayo de 2006.
Como resultado de estas medidas legislativas, el Banco Gubernamental de Fomento aprobó el aludido préstamo y el Gobierno recibió los fondos necesarios para continuar operando durante el año fiscal 2005-2006. Conforme a ello, la Orden Ejecutiva quedó sin efecto por sus propios términos, según surgía de su séptimo “POR TANTO”. Así lo informó el Secretario de la Gobernación, Hon. Aníbal José Torres, a través de la Carta Circular de 15 de mayo de 2006. Del mismo modo, mediante la Carta Circular Núms. 1300-27-06 de 16 de mayo de 2006, el Secretario de Hacienda dejó sin efecto sus Cartas Circulares Núm. 1300-25-06 y 1300-26-06 en las cuales había impartido instrucciones sobre los procesos para el desembolso de los fondos durante los últimos dos meses del año fiscal 2005-2006, en conformidad con la Orden Ejecutiva.
En vista de estos hechos, expongamos el derecho aplicable.
II
El mandamus es uno de los recursos que puede expedir este Tribunal como parte de su jurisdicción original. Art. V, Sec. 5, Const. E.L.A., L.P.R.A., Tomo 1; Art. 3.002(a) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. sec. 24s(a)); Art. 650 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. see. 3422). El recurso de mandamus es un auto discrecional y altamente *365 privilegiado mediante el cual se ordena a una persona o personas naturales el cumplimiento de un acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Art. 649 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. see. 3421); Báez Galib y otros v. C.E.E. II, 152 D.P.R. 382 (2000).
La expedición del auto de mandamus requiere que el demandado o los demandados cuenten con la facultad en ley para ejecutar el acto ordenado por el tribunal, ya que este recurso no confiere una nueva autoridad. Art. 649 del Código de Enjuiciamiento Civil de 1933, supra. Sin embargo, el acto que se intenta compeler mediante este recurso debe surgir de la ley como un deber ministerial, que no admita discreción en su ejercicio por parte del demandando. Noriega v. Hernández Colón, 135 D.P.R. 406 (1994). Ello significa que la ley debe prescribir y definir dicho acto con tal precisión y certeza que nada deja al ejercicio de juicio o criterio alguno. D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Ed. U.I.A., 1996, pág. 107.
No obstante, hemos aclarado que este deber no necesariamente tiene que surgir expresamente de un estatuto, pues le corresponde a los tribunales interpretar la ley para determinar la presencia o ausencia del acto ministerial. Hernández Agosto v. Romero Barceló, 112 D.P.R. 407 (1982). Luego de la evaluación estatutaria, los tribunales pueden determinar si se intenta “compeler la ejecución de actos ilegales, contrarios a la política pública o tendentes a auxiliar un propósito ilegal”, en cuyo caso no procede el recurso de mandamus. Noriega v. Hernández Colón, supra, pág. 456.
En nuestra jurisdicción, además, se ha establecido firmemente que un auto de mandamus puede ser expedido contra el Gobernador del Estado Libre Asociado de Puerto Rico. Véase D. Rivé Rivera, El Mandamus en Puerto Rico, *366 46 Rev. C. Abo. P.R. 15, 27-28 (1985). Así lo reconocimos desde que se introdujo este recurso a nuestro ordenamiento legal, al resolver que el Gobernador
... está sujeto al auto de mandamus lo mismo que cualquier otro funcionario de estado del departamento ejecutivo. Nuestro gobierno es un gobierno de ley, y todos los funcionarios desde el más alto hasta el más inferior están obligados á obedecer á la ley sin duda alguna. Lutz v. Post, Gobernador de Puerto Rico, 14 D.P.R. 860, 869-870 (1908).
Ahora bien, la expedición del recurso que discutimos requiere el previo análisis de los factores siguientes: (1) el posible impacto que éste pueda tener sobre los intereses públicos que puedan estar involucrados; (2) evitar intromisiones indebidas con los procedimientos del Poder Ejecutivo, y (3) que el acto no se preste a confusión o perjuicio de los derechos de terceras personas. Noriega v. Hernández Colón, supra.
Al momento de determinar si se expide o no el auto, cobra particular importancia el posible impacto que pudiera tener su expedición sobre los intereses públicos. Báez Galib y otros v. C.E.E. II, supra. “De ordinario, el posible impacto público que tendrá la expedición del mandamus será proporcional a la importancia del deber ministerial que se alega ha sido incumplido y que se pretende vindicar mediante el mandamus.” Id., pág. 392. En este sentido, el criterio que gobierna la expedición de este recurso se parece al que impera en los interdictos, en donde reviste gran importancia el posible impacto al interés público. Rivé Rivera, op. cit, págs. 113-114; A.P.P.R. v. Tribunal Superior, 103 D.P.R. 903 (1975).
Es menester señalar que, desde los inicios de este recurso extraordinario en nuestro sistema judicial, hemos interpretado como un acto excepcional el que este Tribunal, en jurisdicción original, expida un auto de mandamus. Véanse: Palmer v. Guerra, 9 D.P.R. 555 (1905); Negrón et al. v. El Superintendente de Elecciones, 11 D.P.R. 366 *367 (1906); Partido Popular v. Gallardo, 56 D.P.R. 706 (1940); Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1960); PAC v. Gobernador, 85 D.P.R. 156 (1964); El Vocero v. Hernández Agosto, 130 D.P.R. 501 (1992). Así, en el pasado, hemos indicado que el ejercicio de nuestra jurisdicción original dependerá de que la solicitud de mandamus vaya dirigida contra un principal funcionario del Gobierno, que levante cuestiones de gran interés público y que se requiera de un pronto y urgente despacho del asunto que no puede ser conseguido a través de los tribunales de instancia. Id.
Por último, debemos hacer hincapié en que el auto de mandamus, por tratarse de un recurso altamente privilegiado, debe ser expedido luego de una serena y ponderada evaluación de las circunstancias e intereses presentes en la controversia. Así lo hemos reconocido anteriormente, al ex-presar:
Para que deba expedirse un auto de mandamus, sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto “altamente privilegiado”, según expresa la ley de su creación, 32 LPRA see. 3421, y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial. En otras palabras, el remedio no se concede ex debito justitiae y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto. (Enfasis suplido y escolio omitido.) Dávila v. Superintendente de Elecciones, supra, págs. 283-284.
Conforme al trasfondo jurídico esbozado, nos toca deter *368 minar si en este caso procede la expedición del auto de mandamus.
Ill
El Contralor del Estado Libre Asociado de Puerto Rico nos solicita que expidamos un auto de mandamus dirigido al Gobernador, en consideración a que éste ordenó que se desembolsara únicamente el setenta y cinco por ciento de los gastos de nómina y demás gastos operacionales de la Oficina del Contralor, proyectados para mayo y junio de 2006. Nos solicita que le ordenemos al Primer Ejecutivo dejar sin efecto dicha directriz, ya que no posee la facultad legal ni constitucional para obrar de esa manera.
Al atender este planteamiento, tomamos conocimiento judicial de que al ser aprobada la Ley para el Financiamiento del Déficit Gubernamental del 2006 y la Resolución Conjunta Núm. 119 de 13 de mayo de 2006, entre otras piezas legislativas, cesaron aquellas razones aducidas por el Gobernador en su Orden Ejecutiva para ordenar el desembolso limitado de los gastos de la Oficina del Contralor. Igualmente, tomamos conocimiento judicial de que, a partir de la aprobación de estas medidas, el Gobierno del Estado Libre Asociado de Puerto Rico recibió los fondos necesarios para continuar sus operaciones en la última etapa del año fiscal 2005-2006. Siendo así, la directriz contenida en la Orden Ejecutiva, cuya reversión solicita el Contralor en este caso, perdió su eficacia por sus propios términos. Es decir, el Contralor ya obtuvo el remedio que nos solicitó. El Gobernador había ejecutado el acto que el Contralor le pretendía obligar mediante una orden de este Tribunal.
En atención a este cuadro fáctico, procede denegar el auto de mandamus solicitado. El auto de mandamus no debe expedirse para resolver una controversia que, como la de autos, ya ha sido resuelta por las Ramas Ejecutiva y *369 Legislativa. El carácter altamente privilegiado de este recurso requiere que su expedición tenga lugar solamente en circunstancias extraordinarias, cuando el balance de los intereses implicados amerite la intervención del foro judicial.
Conforme a lo expresado, denegamos el auto de mandamus solicitado por el Contralor y ordenamos el archivo del caso sin mayor pronunciamiento.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez emitió una opinión disidente.
(Fdo.) Aida I. Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por el
Juez Asociado Señor Fuster Berlingeri.
Estoy conforme con el dictamen de la mayoría del Tribunal de denegar el recurso instado por el Contralor de Puerto Rico en el caso de autos. Ello porque la controversia particular entre el peticionario y el Gobernador de Puerto Rico que motivó este pleito, en estos momentos, se desvaneció. El recorte presupuestario anunciado por el Gobernador y que el Contralor impugnaba aquí, a última hora no llegó a materializarse. De pronto no tenemos nada concreto que resolver y procede, pues, que ordenemos el archivo del recurso pendiente.
Lo anterior no obstante, vista la opinión disidente que se ha emitido en el caso de autos, creo menester abordar la vital cuestión que está presente al fondo de la acción ins *370 tada por el Contralor. Me parece necesario destacar que existe otro parecer jurídico sobre el asunto en controversia, distinto al de la opinión disidente. Me refiero a la cuestión de si el Gobernador de Puerto Rico tiene la facultad para ordenar recortes en un presupuesto ya aprobado, como el del caso de autos, cuando las asignaciones dispuestas en éste exceden los recursos disponibles. La cuestión se refiere particularmente a la facultad del Gobernador: (1) sobre aquellas asignaciones dispuestas en el presupuesto anterior, cuando éste vuelve a estar vigente, y (2) que atañen a entidades que no forman parte de la Rama Ejecutiva. ¿Qué límites tiene el Gobernador en tales circunstancias?
Se trata de un asunto importante que no está atendido de manera concreta en el texto de la Constitución del país, por lo que ha sido objeto de graves disputas entre la Rama Ejecutiva y la Rama Legislativa. Veamos.
I
Si hay algo que resalta de modo contundente del designio constitucional adoptado por el propio Pueblo de Puerto Rico en 1952 es la preeminencia del Gobernador frente a la Asamblea Legislativa en la determinación de los asuntos públicos del país, sobre todo en los relativos al presupuesto. Don José Trías Monge, en su monumental obra sobre nuestra Constitución, explica una y otra vez(1) que a pesar de que la ocasión era propicia para ello, la Convención Constituyente no logró las reformas necesarias para evitar que hubiese una excesiva concentración de poderes en el Ejecutivo y un desnivel con respecto a los de la Asamblea Legislativa. Indica Trías Monge que “la Asamblea Legislativa de tiempos de la Convención Constituyente era un organismo de prestigio y eficiencia declinante; ... a cargo de un papel dependiente y pasivo frente a la Rama Ejecutiva” *371 y que ello contribuyó en gran medida a que no se lograse establecer en la Constitución un claro esquema “de responsabilidades verdaderamente compartidas”. J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982, Vol. III, págs. 140 y 137.
Como se sabe, nuestra Constitución dista mucho de incorporar un esquema puro de separación de poderes. Así pues, “varios desarrollos de gran importancia han constitu[i]do desviaciones considerables de la teoría tradicional de la separación de poderes”. (Enfasis suplido.) R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. del Colegio de Abogados de Puerto Rico, 1986, Vol. I, pág. 581. Uno de esos desarrollos es la intensa participación del Ejecutivo en el proceso legislativo, sobre todo en lo relativo al presupuesto.
La preeminencia del Gobernador con respecto al presupuesto surge patentemente al considerar, a la luz del historial constitucional, el proceso que da lugar a la confección e implantación del presupuesto, y al examinar en conjunto las disposiciones constitucionales sobre el particular. En primer lugar, en la See. 4 del Art. IV de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, se le encomienda al Gobernador dirigirle anualmente un mensaje a la Asamblea Legislativa sobre las condiciones del Tesoro de Puerto Rico y sobre los desembolsos propuestos para el año económico siguiente. Es el Gobernador, pues, quien inicia el proceso de confeccionar y aprobar el presupuesto, presentándole a la Legislatura los proyectos de administración sobre el particular.
Una vez las cámaras legislativas aprueban las medidas presupuestarias, éstas no se convierten en ley hasta que el Gobernador les extiende su conformidad y les imparte su firma. En ese proceso, el Gobernador puede “eliminar una o más partidas, o disminuir las mismas, reduciendo al mismo tiempo los totales correspondientes” cuando algún proyecto de ley “asigne fondos en más de una partida”. (En *372 fasis suplido.) Esta facultad, el llamado “veto de partidas”, le permite al Gobernador realizar modificaciones de las partidas y del total presupuestario sin ninguna intervención legislativa, y la Asamblea Legislativa no tiene facultad alguna para revocar las referidas acciones del Gobernador, ni siquiera por mayoría especial. Véanse: 2 Diario de Sesiones de la Convención Constituyente 879 (1951); 3 Diario de Sesiones de la Convención Constituyente 1950-1951 (1952).
Finalmente, en casos en los que no se logra aprobar un presupuesto para un año económico, por lo que por mandato constitucional continúa rigiendo el presupuesto del año anterior, es el Gobernador quien autoriza los desembolsos presupuestarios correspondientes.
Como puede observarse, la injerencia del Gobernador, sobre todo en lo relacionado al presupuesto, según lo dispuesto por la Constitución, es abarcadora y determinante. Es tan amplia esa injerencia que uno de los asesores principales de la Convención Constituyente, el profesor Carl J. Friedrich, criticó más tarde que se hubiese concentrado tanto poder sobre el presupuesto en el Gobernador porque, según él, se reducía la Legislatura “a poco más que un sello de goma”. (Énfasis suplido.)(2)
Es menester resaltar que la crítica de Friedrich, mencionada antes, surgió precisamente por razón de la disposición constitucional que le otorga al Gobernador el llamado veto de partidas, referido antes. Friedrich estimaba que tal facultad “hac[íá\ demasiado fuerte la posición del jefe del ejecutivo”(3) con respecto al presupuesto. (Énfasis suplido.) El poder de vetar o modificar partidas, fijado en la Sec. 20 del Art. Ill de la Constitución, supra, fue tomado directamente de la Carta Orgánica Jones y correspondía al *373 Art. 34 de dicha Carta, L.P.R.A., Tomo 1. Se trataba de una disposición que fue interpretada por este Tribunal en tres ocasiones: Ferrao v. Cordero, Auditor, 67 D.P.R. 337 (1947); León Parra v. Fitzimmons, 61 D.P.R. 351 (1943), y De la Rosa v. Winship, Gobernador, 47 D.P.R. 330 (1934). En dichas decisiones resolvimos concretamente que el poder del Gobernador de vetar partidas presupuestarias incluía el poder de reducir dichas partidas. Más aún, también resolvimos que se trataba de un amplio poder que tenía el Gobernador, de naturaleza legislativa, e intimamos que era tan amplio como la misma facultad legislativa sobre el presupuesto. Incluso señalamos que al ejercer tal poder el Gobernador no violaba la doctrina de separación de poderes. Ello, porque cuando el Gobernador ejercía dicho veto, actuaba como parte del proceso legislativo. De la Rosa v. Winship, Gobernador, supra, pág. 334. En el Informe de la Rama Legislativa de la Convención Constituyente se hizo claro que al otorgarle al Gobernador el veto de partidas en la Sec. 20 del Art. Ill de la Constitución, supra, se procuraba concederle la misma facultad que éste ya tenía sobre el veto de partidas, en virtud del Art. 34 de la Carta Jones, supra. Véase 4 Diario de Sesiones de la Convención Constituyente 2586 (1951).
Tenía razón, pues, Friedrich al pensar que al otorgarle el veto de partidas al Gobernador se fortalecían enormemente sus facultades sobre el presupuesto. Nótese que dicho poder se otorgó tal como estaba constituido entonces en el Art. 34 de la Carta Jones, supra, y según lo había interpretado este Tribunal. Reiteradamente hemos resuelto que cuando se toma una norma jurídica de otro ordenamiento debe presumirse que se adopta también la interpretación y el alcance que tenía dicha norma en ese ordenamiento. Véanse: Rodríguez Rosado v. Syntex, 160 D.P.R. 364 (2003); Pueblo v. Vargas De Jesús, 146 D.P.R. 702, 709—710 (1998); Pérez Maldonado v. J.R.T., 132 D.P.R. 972 (1993). En este caso, no es necesario descansar en este conocido *374 principio de hermenéutica, pues sabemos por el propio historial constitucional que en la propuesta de la Escuela de Administración Pública a la Convención Constituyente, recomendando que se adoptara en la Constitución el veto de partidas de la Carta Jones, se citaba la jurisprudencia de este Tribunal sobre el referido Art. 34 de la Carta Jones. Véase La Nueva Constitución de Puerto Rico, San Juan, Ed. U.P.R., 2005, págs. 424-426. Véanse, además: 2 Diario de Sesiones de la Convención Constituyente 879 (1951); 3 Diario de Sesiones de la Convención Constituyente 1950-1951 (1952).
En resumen, pues, al otorgarle al Gobernador el veto de partidas, la intención clara de los miembros de la Convención Constituyente fue la de concederle un amplísimo poder sobre el presupuesto. El asunto se aprobó en la Convención Constituyente con clara conciencia de lo que se hacía y con muy poco debate en oposición. Véase Trías Monge, op. cit., págs. 162-163.
II
A la luz de todo lo anterior, parece lógica una sola conclusión con respecto al asunto que aquí nos concierne. Dado que la Constitución le encomienda vastos poderes al Gobernador con respecto a la confección, aprobación e implantación del presupuesto, por implicación su autoridad también incluye la facultad y el deber de velar por que se cumpla siempre el fundamental mandato incorporado en el Art. VI, Sec. 7 de la Constitución, L.P.R.A., Tomo 1, de que las asignaciones presupuestarias correspondientes a un año económico no podrán exceder los recursos totales calculados para dicho año. No tendría coherencia jurídica alguna que se exija constitucionalmente que en cualquier año las asignaciones presupuestarias de ese año no pueden exceder los recursos anticipados para éste, pero que dicho *375 principio fundamental no tenga que seguirse cuando las asignaciones en un año particular surgen del presupuesto del año anterior. Los esenciales propósitos económicos y políticos que informan el principio que prohíbe los déficits presupuestarios son válidos siempre, y no hay nada en el historial de la Constitución que permita suponer lo contrario, sobre todo cuando en el informe a la Convención Constituyente sobre las disposiciones constitucionales relativas al presupuesto se enfatizó que con éstas se procuraba “mantener la estabilidad económica del gobierno”. (Enfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2587 (1951).
Tampoco tendría coherencia jurídica alguna que se le concediesen al Gobernador los poderes abarcadores que se le dieron sobre el presupuesto, sobre todo el veto de partidas con el alcance y significado que ya hemos precisado, pero que se le hubiese negado la facultad de aplicar el veto de partidas al llamado presupuesto constitucional; es decir, al presupuesto dispuesto en el Art. VI, Sec. 6 de la Constitución, L.P.R.A., Tomo 1. Lo lógico, más bien, es inferir que la facultad y el deber del Gobernador de evitar presupuestos deficitarios se extiende a cualquier presupuesto, incluyendo el de un año anterior que entra en vigor también para el año económico siguiente, debido a un impasse entre las ramas políticas, no se logró aprobar un presupuesto propio para ese año.
Del indiscutible historial de la Constitución, pues, surge claramente que, con relación a la situación prevista en el Art. VI, Sec. 6 de la Constitución, supra —el llamado presupuesto constitucional— el Gobernador tiene el deber de ejercer su discreción para lograr que se realice el referido mandato de la See. 7 de ese mismo artículo, supra, de que las asignaciones no excedan los recursos anticipados. Ello sujeto sólo a lo dispuesto en la el Art. VI, Sec. 8 de la Constitución, supra, sobre las prioridades en los desembolsos. Pero, más allá de esas prioridades, al procurar un balance *376 entre asignaciones y recursos presupuestarios, el Gobernador sólo está limitado por su buen juicio con respecto a lo que requiere el bien común. Conforme a lo que sucedió en la Convención Constituyente, a las inferencias incuestionables que surgen del historial de la Constitución y del análisis contextual de nuestra ley fundamental, el Gobernador tiene clara autoridad constitucional para hacer los ajustes y las reducciones presupuestarias que en buena lid procedan, incluso la que se cuestionó en el caso de autos.(4)
En vista de lo anterior, no tiene razón el Contralor en sus planteamientos ante nos en este caso, por lo que pro-cede que se deniegue el recurso solicitado.

 Véanse, por ejemplo: Ley para el Financiamiento del Déficit Gubernamental de 2006, Ley Núm. 90 de 13 de mayo de 2006; Ley del Fondo de Interés Apremiante, Ley Núm. 91 de 13 de mayo de 2006; Ley para la Imposición de Contribución Ex-traordinaria de 2006, Ley Núm. 98 de 16 de mayo de 2006; Ley para la Reforma Fiscal de 2006, Ley Núm. 103 de 25 de mayo de 2006; enmiendas a la Ley de Bonos del Gobierno, Ley Núm. 104 de 25 de mayo de 2006; enmiendas a la Ley de la Oficina de Gerencia y Presupuesto, Ley Núm. 106 de 25 de mayo de 2006; Ley de Control de Gastos en la Nómina Gubernamental para la Reforma Fiscal del 2006, Ley Núm. 111 de 31 de mayo de 2006; Resolución Conjunta Núm. 119 de 13 de mayo de 2006 (R.C. de la C. 1485).

 Véase J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982, Vol. III, págs. 107-114, 135-140, 152-153 y 162-163.

 Véase el capítulo introductorio de la obra La nueva Constitución de Puerto Rico, San Juan, Ed. U.P.R., 2005, págs. 15-26, particularmente la pág. 21.

 íd.

 Debe quedar claro que de ningún modo se juzgan aquí los méritos de la reducción concreta impugnada en el caso de autos. Si fue acertada o no es un asunto político que rebasa la evaluación judicial. Sólo se afirma aquí que el Gobernador tiene la facultad constitucional para hacer reducciones como la de autos. Nada decimos o intimamos sobre si fue prudente realizarla o no.